In the Matter of WILLIAM T. RUSHFORD et al., Appellants and Respondents, against FIORELLO H. LAGUARDIA, as Mayor of the City of New York, et al., Respondents and Appellants.

Argued February 21, 1939; decided April 11, 1939.

*Irving H. Saypol* and *Leo Kotler* for petitioners, appellants and respondents. The budget adopted prior to December 25, 1937, is valid as the budget for the year 1938 and for the first six months of 1939. (*Dixon* v. *LaGuardia,* 166 Misc. Rep. 889; 253 App. Div. 881; 277 N. Y. 84.) The purported resolution of the Board of Estimate of February 28, 1938, is void. (*Thoma* v. *City of New York,* 263 N. Y. 402; *Dixon* v. *LaGuardia,* 166 Misc. Rep. 889.) The resolution of the Board of Estimate, assuming it to be validly adopted, was ineffective as to the petitioners. (*Whitmore* v. *Mayor,* 67 N. Y. 21; *Schieffelin* v. *Leary,* 219 App. Div. 660.) Those petitioners appointed after January 1, 1938, at $2,000 or $1,200 per annum are entitled to receive salary at $3,240 per annum from the date of appointment. (*Hanley* v. *City of New York,* 250 App. Div. 552; 275 N. Y. 482.) Section 93c–2.0 of the Administrative Code of the City of New York (L. 1937, ch. 929), providing that the failure to sign a payroll under protest shall be deemed an accord and satisfaction of all claims against the city for wages or salary due to such person for the period covered by such payroll, is unconstitutional. (*People ex rel. Witherbee* v. *Supervisors,* 70 N. Y. 228; *Williams* v. *Village of Port Chester,* 72 App. Div. 505; *People* v. *Johnson,* 185 N. Y. 219; *Gilbert* v. *Ackerman,* 159 N. Y. 118; *United States* v. *Wiley,* 11 Wall. 508; *Fuller* v. *Kemp,* 138 N. Y. 231; *Nassoiy* v. *Tomlinson,* 148 N. Y. 326; *Laroe* v. *Sugar Loaf Dairy Co.,* 180 N. Y. 367; *Kehn* v. *State,* 93 N. Y. 291; *McMahon* v. *Mayor,* 22 App. Div. 113; *Mance* v. *Hossington,* 205 N. Y. 33; *Jaffray* v. *Davis,* 124 N. Y. 164; *Komp* v. *Raymond,* 175 N. Y. 102; *Bung* v. *Koop,* 48 N. Y. 225.)

*William C. Chanler,* Corporation Counsel (*William S. Gaud, Jr.,* of counsel), for defendants, respondents and appellants. Section 68 of the charter empowered the Board of Estimate to reduce the petitioners' salaries to $1,200 a year on February 28, 1938. (*Matter of Hurlbut,* 88 Misc. Rep. 679; 169 App. Div. 958; *Matter of Edkins* v. *Wotherspoon,* 173 App. Div. 330; *People ex rel. Kaufman* v. *Board*

*of Education*, 166 App. Div. 58; *Matter of Spawn* v. *Fleming*, 208 App. Div. 582; *Thoma* v. *City of New York*, 263 N. Y. 402; *People ex rel. Plancon* v. *Prendergast*, 219 N. Y. 252; *Buckbee* v. *Board of Education*, 115 App. Div. 366; 187 N. Y. 544; *Sauerbrunn* v. *Board of Education*, 150 App. Div. 407; 208 N. Y. 550; *Walters* v. *City of New York*, 190 N. Y. 375; *People ex rel. Stokes* v. *Tully*, 108 App. Div. 345.) The petitioners who were appointed on or after January 1, 1938, at salaries of less than $3,240 a year are in no event entitled to receive any greater salaries than those at which they were appointed. (*Matter of Debrovolny* v. *Prendergast*, 219 N. Y. 280; *People ex rel. Plancon* v. *Prendergast*, 219 N. Y. 252.) Section 93c–2.0 of the Administrative Code forbids the granting of any relief to those of the petitioners who failed to sign their payrolls under protest. (*Quayle* v. *City of New York*, 278 N. Y. 19; *Dodge* v. *City of New York*, 278 N. Y. 25; *Matter of Shevlin* v. *LaGuardia*, 254 App. Div. 922; 279 N. Y. 749.)

LOUGHRAN, J. The main questions concern the limits of the power of the Board of Estimate of the city of New York to fix salaries paid from the city treasury.

The position of clerk to a justice of the Municipal Court of the city of New York was created by chapter 235 of the Laws of 1929, which provides as follows: " There shall also be a clerk to each justice of such court. Such clerk and his successors shall be appointed by such justice and shall hold office during the pleasure of such justice. The salaries of such clerks shall be fixed by the board of estimate and apportionment of such city." On January 1, 1938, the powers of the Board of Estimate and Apportionment became vested in its successor, the Board of Estimate. (New York City Charter, effective Jan. 1, 1938, § 957.)

In the budget of the city for 1938 the salary of a clerk to a justice of the Municipal Court was fixed at $3,240 a year by the 1937 Board of Estimate and Apportionment. The validity of this budget was upheld in *Dixon* v. *LaGuardia* (277 N. Y. 84). On the day that case was decided (February

28, 1938), the then Board of Estimate adopted a resolution which in part is as follows:

" Resolved, that, pursuant to the provisions of sections 67 and 68 of the New York City Charter, the Board of Estimate does hereby fix salaries and create, abolish and modify positions and grades of positions as appearing in the Budget voted upon by the Board of Estimate and Apportionment on October 29, 1937, in accordance with the schedules hereto attached, such modifications to take effect as of March 1, 1938;  *  *  *

" MUNICIPAL COURT

Estimate No. 70

| Code No. | Line No. | Eliminate | Substitute |
|---|---|---|---|
| 2945 | 15 | Clerk to Justice | |
| | | 68 at $3240— | 68 at $1200— |
| | | $220,320. | $81,600." |

Under this form the 68 clerks to the justices of the Municipal Court have been paid at the rate of $1,200 a year since March 1, 1938. They brought this proceeding to compel payment of their salaries from that date at the budgetary rate of $3,240 a year. Not all of them stand in the same position. Eleven were appointed in 1938 at salaries less than $3,240 a year. Twenty-nine at one time or another after March 1, 1938, failed to protest payment of their salaries at the $1,200 rate. The situations of these forty petitioners do not, however, require separate consideration if the Board of Estimate had power to adopt the resolution of February 28, 1938. In that case, none of the petitioners can prevail.

This first question entirely turns on the construction of section 68 of the new charter which had no analogue in the old charter. Section 68 provides: " Creating, Abolishing or Modifying Positions and Grades. The board of estimate may at any time, subject to the provisions of this charter and of the civil service law and except as otherwise provided by statute, create, abolish or modify positions and

grades of persons paid from the city treasury." No claim is made that any conflicting provision of the Civil Service Law (Cons. Laws, ch. 7) or other statute is here applicable.

As appellant on this branch of the case, the city takes the ground that section 68 within its limits is authority to the Board of Estimate to increase or reduce — as and when it chooses — any of the thousands of budgetary salary items, so long as the total amount of a budget is not exceeded. We think the words of section 68 would not be so understood by ordinary people — or for that matter even by those who may be able to read the section by the lamp of technical knowledge of the complexities of municipal budget making. Neither the position nor the grade of any .person in the service of the city would be either *created* or *abolished* were his salary changed. .The whole idea of the city's argument at this point is that the phrase " *modify* positions and grades of persons " means " reduce the salary of any person." We feel safe in the conviction that so forced a construction would add to the text of section 68 something that cannot reasonably be found there. The collateral provisions of the charter and of the Administrative Code referred to by Judge RIPPEY fortify this conclusion. We have no doubt that the courts below rightly held that section 68 empowers the Board of Estimate to create, abolish or modify positions only when it adopts a budget.

It follows that the budgetary rate of $3,240 is still in force and so we pass to the cases of the eleven petitioners who were appointed in 1938 at lesser salaries.

The budget became effective January 1, 1938. Except as to elected officials, it provided that any vacancy then existing or occurring thereafter should be filled only when the head of the department, board, bureau or office had authority from the Director of the Budget in the form of a written certificate " specifying the manner in which such vacancy is to be filled and the rate of compensation to be paid." It also provided that the Comptroller should not pay the salary of any person appointed after January 1, 1938, unless there was on file in his office such a certificate

of the Director of the Budget, " and then only at the rate of compensation stated in the certificate." Pursuant to such certificates issued to the Municipal Court, the eleven petitioners in question were appointed, seven at an annual salary of $2,000, four at an annual salary of $1,200. On the supposed authority of *Whitmore* v. *Mayor* (67 N. Y. 21) the Special Term ruled that the only measure of their compensation was that fixed by the budget. The Appellate Division reversed that ruling and held that none of them was entitled to more than the salary at which he was so appointed. This issue is before us for review on the cross-appeal of ten of the aggrieved petitioners. We think the Appellate Division correctly disposed of it.

The salaries of the eleven petitioners were not fixed by statute. (Cf. *Whitmore* v. *Mayor, supra; People ex rel. Bacon* v. *Board of Supervisors*, 105 N. Y. 180.) As has already been observed, chapter 235 of the Laws of 1929, which created the office of clerk to a justice of the Municipal Court, granted full power to fix the salary to the Board of Estimate and Apportionment. The regulations respecting the filling of vacancies were put into the budget by that Board. These, we think, were a reasonable method for exercise of its salary-fixing power. (See *People ex rel. Plancon* v. *Prendergast*, 219 N. Y. 252.) The petition does not allege that the Director of the Budget acted arbitrarily or without reason. Under the circumstances, our judgment is that each of the eleven petitioners should have only his appointed salary.

For the reasons stated by Judge RIPPEY the petitioners who failed to sign their payrolls under protest cannot have relief.

The order of the Appellate Division should be affirmed, without costs.

FINCH, J. (dissenting in part). It is agreed that there can be no recovery by those of the petitioners who failed to protest. (*Quayle* v. *City of New York*, 278 N. Y. 19; *Matter of Shevlin* v. *LaGuardia*, 254 App. Div. 922; affd., 279 N. Y. 649.)

It is also agreed that there can be no recovery by those of the petitioners who accepted appointment at a lower salary pursuant to the certificate of the Budget Director. (*Matter of Dobrovolny* v. *Prendergast*, 219 N. Y. 280.)

I cannot agree, however, that there can be a recovery by the remaining petitioners in disregard of the resolution by the city of New York reducing the salaries pursuant to sections 67 and 68 of the charter.

The question presented here is whether the Board of Estimate has the power, between the times of adopting the budget, to reduce the salaries of the clerks of the Municipal Court.

No issue affecting the independence of the judicial branch of the government is involved, since there is nothing to prevent the city from reducing the salaries of the judges of the Municipal Court. (*Haggerty* v. *City of New York*, 267 N. Y. 252.) The Legislature has provided expressly: " Salaries of such clerks shall be fixed by the board of estimate and apportionment of such city." (Laws of 1929, ch. 235.)

No other prohibition, statutory or otherwise, existing, we are thus directed to the question whether the language of section 68 of the charter of the city of New York permits the Board of Estimate of the city to make this reduction. Section 68 of the charter provides:

" § 68. Creating, abolishing or modifying positions and grades. The board of estimate may at any time, subject to the provisions of this charter and of the civil service law and except as otherwise provided by statute, create, abolish or modify positions and grades of persons paid from the city treasury."

This statute must be enforced according to its terms. There is no ambiguity in its language.

Clearly the language is sufficiently broad to authorize the action of the Board of Estimate. It is conceded that such action might be taken at the annual making of the budget. Section 68 expressly gives power to " modify positions " " at any time." This language applies to the positions

held by these petitioners. The authority sought by the city, namely, to control the expenditures from its own treasury, consists of nothing unusual but is the ordinary authority possessed by every corporation, large or small. It is well within the principle of home rule, and the court might almost take judicial notice of the efforts which the city has been making over the course of the years to acquire the elementary right to control its own expenditures. Also, the city has been granted a similar right by the Legislature on many special occasions prior to the adoption of this new charter. For example, statutes gave the right to the city to rearrange and reclassify salaries during the recent financial emergency, even though they had been fixed previously in the budget. This power, then granted to the city, has been continued by section 68 and has eliminated the necessity for the city to apply to the Legislature for such an enabling act on special occasions, because section 68 explicitly provides that such power may be exercised at any time.

It is urged that the phrase " modify positions and grades of persons " does not grant authority to change salaries. The dictionary defines " position " as including employment. It requires no citation of authorities to demonstrate that one of the most important attributes of employment is the amount of compensation. Furthermore, section 68 ties up the positions and grades referred to with the compensation paid from the city treasury. If that is altered, certainly the employment or position is modified to the extent of the change in salary. But it is further urged that even if this power exists it must be *confined* to budget-making time. A complete answer, however, is that the power is expressly given to be exercised " at any time." It is further urged that if this elasticity in reference to the details of the budget is permitted to the city of New York then there will be nullified the salutary restraint arising out of the adoption of the budget. This overlooks the fact that the important consideration in the making of any budget is the total amount which will be required by that budget. Along with this must go hand in hand a certain amount of

elasticity with reference to the details in order to take care of various contingencies which are continually arising in connection with the operation of the government of the city of New York. The argument that to give to the city the power to deal with the details of the budget during the fiscal year violates some fundamental principle or policy of budget making ignores the fact that the courts have long upheld the same power of department heads to reduce the salaries of their employees whenever they see fit, provided only that they do not violate some express statutory prohibition. (Cf. *Thomas* v. *City of New York*, 263 N. Y. 402.) The effect of section 68 is to vest now in the Board of Estimate a power no greater than that which has always been recognized to belong to the heads of departments. Furthermore, other provisions of the charter confirm this construction of section 68 in reference to the power to deal with positions and grades. Sections 123, 127 and 128 furnish power to the Board of Estimate to transfer appropriations, provided the total amount of appropriations is not exceeded. Thus, sections 123, 127, 128, 67 and 68 evidence a design to make the budget elastic within the confines of the total amount appropriated.

It has been suggested that the city is without power to fix the salary at so unreasonably low a figure that the office created by statute would be destroyed for all practical purposes. But petitioners do not contend that such is the present case.

It follows that the order appealed from should be modified and the petition dismissed as to all.

RIPPEY, J. (dissenting in part). This case involves the compensation payable to sixty-eight clerks to the justices of the Municipal Court of the City of New York. Of this number, fifty-seven were appointed to their positions prior to January 1, 1938, at a salary of $3,240 per year; seven were appointed to existing vacancies between January 1, 1938, and March 1, 1938, upon certificates of the Director of the Budget that the vacancies might be filled and that a $2,000

per year salary only could be paid; and four were appointed after March 1, 1938, upon certificates of the Director of the Budget under a resolution by the Board of Estimate of the City of New York, passed on February 28, 1938, that a salary of $1,200 per year only should attach to the position. By the same resolution of the Board of Estimate the salaries of the other sixty-four were reduced to $1,200 per year each. This proceeding is brought to compel restoration of the salary of $3,240 to each position and for recovery by incumbents of the difference between that salary and the $1,200 which the city has paid.

It was held by the Special Term that any of the petitioners who had received the $1,200 salary and had failed to sign the payroll under protest, as required by section 93c–2.0 of the Administrative Code of the City of New York, could not maintain an action to recover the difference between the amount received and the amount of salary attaching to the position for the period covered by the particular payroll not protested and, as to that portion of the order, the Appellate Division has affirmed. The Special Term further held that, except so far as petitioners had failed to protest the amounts received, each was entitled to recover the difference between the amount received from the city and the *pro rata* amount which he was entitled to receive at the salary of $3,240 per year. The Appellate Division modified so much of that portion of the order of the Special Term as applied to ten occupants of the position of clerk appointed subsequent to January 1, 1938, to fill vacancies then existing, and, as to them, held that they were entitled only to the salary as fixed by the Budget Director as to six and by the Budget Director upon the resolution of the Board of Estimate as to four. By cross-appeals the parties are severally bringing up for review those portions of the order of the Appellate Division by which they are adversely affected. I am of the opinion that the order of the Special Term was, in all respects, correct.

Under section 93c–2.0 of chapter 5 of the Administrative Code of the City of New York (Laws of 1937, ch. 929, in

effect January 1, 1938), each person receiving a salary from the city treasury is required to sign and receipt the payroll. It is further provided that any such person who shall "sign the receipt upon such payroll as having received the amount therein mentioned in full payment for services rendered by him for the entire time specified in such payroll, shall be deemed to have made an accord and satisfaction of all claims against the city for wages or salary due to such person from the city for the period covered by such payroll, unless at the time of signing such payroll the person receiving such wages or salary shall write legibly thereon in connection with his receipt that the amount received is received under protest." In *Quayle* v. *City of New York* (278 N. Y. 19) we held that section 149 of the *old* charter (Laws of 1901, ch. 466, as amd.), being the same as section 93c–2.0 of the Administrative Code, if constitutional, must be enforced according to its terms, notwithstanding the salary of plaintiff, a sheriff, was fixed by statute, and in *Matter of Shevlin* v. *LaGuardia* (279 N. Y. 649) we held that section 149 was constitutional and was applicable to Supreme Court attendants. The same conclusions must necessarily follow as to the constitutionality of section 93c–2.0 of the Administrative Code and as to the application of its provisions to the petitioners here.

The position of clerk to each justice of the Municipal Court of the City of New York was created by the State Legislature in chapter 235 of the Laws of 1929. By that act it was further provided that power of appointment should reside in the justice and that the appointee of each justice should hold office during his pleasure but that the salary of the clerk should be fixed by the Board of Estimate and Apportionment of the city. By the provisions of section 957 of the new charter (in effect January 1, 1938) the Board of Estimate became the successor of the Board of Estimate and Apportionment. Acting upon the legislative mandate, on at least eight successive occasions the Board of Estimate and Apportionment determined that the requirements of the position commanded a salary of $3,240

per year. During the latter part of 1937 the salary of each of the sixty-eight positions was duly fixed by the Board of Estimate and Apportionment for the year 1938 and for the first six months of 1939 at $3,240 per year, and such salaries became a part of the budget duly adopted for that period.

The *first* attempt that was made to reduce the salaries of the clerks then in office was made on January 3, 1938, when the Board of Estimate passed a resolution fixing the salary for the office at $2,000 per year. Such resolution was ineffective to accomplish the purpose of reducing the salary from the amount fixed in the budget adopted in December, 1937. (*Dixon* v. *LaGuardia*, 277 N. Y. 84.)

*Next*, as to each appointee to fill a vacancy in the office of clerk, it was asserted and still is insisted that he must secure a certificate from the Budget Director fixing his salary and authorizing his appointment. The 1938 budget provides that a vacancy can be filled only upon application of the head of the department, board, bureau or office to the Budget Director, who may, in his discretion, grant the application and fix the salary to be paid to the appointee or deny the application. If the application is granted he must issue his certificate in which he names the appointee and fixes his salary. The Comptroller is forbidden to authorize the payment of salary to any such appointee unless and until such a certificate is filed with him. The defendants seek to maintain that appointments made after January 1, 1938, to fill vacancies in the office of clerk to justices of the Municipal Court must follow the procedure there outlined and that no appointee may receive any greater salary than that authorized in the Budget Director's certificate. The power to fill a vacancy in any one of those positions resides exclusively in the justice who is without a clerk owing to the existence of such vacancy. The Legislature gave no power to the Budget Director to determine whether such vacancy should be filled or whom should be appointed or to fix or reduce the salary of an appointee or to the Board of Estimate or to the budget

makers to delegate any such authority to him. Furthermore, the justice of the Municipal Court is not the head of a department, board, bureau or office within the meaning of those provisions. The Municipal Court is a continuation of what was formerly the District Court of the City of New York (*Worthington* v. *London G. & A. Co.*, 164 N. Y. 81), and clerks to the justices are judicial officers, not city employees (*Whitmore* v. *Mayor*, 67 N. Y. 21) to whom alone those provisions of the budget, if valid, relate.

*Finally*, defendants rest upon the resolution of the Board of Estimate, passed on February 28, 1938, whereby all salaries for the position of clerk to the justices of the Municipal Court as contained in the 1938 budget were eliminated and a new salary for each of the positions of $1,200 per year as of March 1, 1938, was substituted. The salaries for several hundred other positions were increased or reduced or the positions abolished. The resolution, as far as it went, was in effect the making of a new budget by the Board of Estimate alone without resort to the budget-making machinery provided for in sections 952 and 111–126, inclusive, of the charter. Authority is claimed to be found for that procedure in sections 67 and 68 of the *new* charter.

With certain exceptions not here pertinent, section 67 vests power in the Board of Estimate to fix the salary of every officer or person whose compensation is paid out of the city treasury. It relates only to the compensation to be paid to city employees. As to clerks to the justices of the Municipal Court, the section, if applicable at all, extends no new power to the Board of Estimate or any power different or more extensive than that given to that Board by the statute creating the position. The salaries to be paid were incidental only to the positions created by the Legislature. They followed and became part of the positions themselves. When the Legislature left it to the Board to fix the salaries the Board was required to act in such a way as to provide adequate compensation for the clerks. The Board could not, in the face of the expressed purpose of the Legislature to provide a clerk for each justice,

practically nullify that purpose by fixing the salary at so small a sum that the justice would be unable to secure a competent clerk. The Board of Estimate, taking office January 1, 1938, derived no power to set aside the provisions of the budget fixing such salaries by virtue of any provision of section 67 of the new charter.

Neither did the provisions of section 68 give the Board any power to fix, modify or reduce such salaries so fixed by the budget. That section reads as follows: " *Creating, abolishing or modifying positions and grades.* § 68. The board of estimate may at any time, subject to the provisions of this charter and of the civil service law and except as otherwise provided by statute, create, abolish or modify positions and grades of persons paid from the city treasury." Neither by words nor by necessary inference does it authorize the fixing, increasing or reduction of salaries already fixed in the current budget for positions named therein. By its express words it authorizes the Board, where it is applicable at all, only to " create, abolish or modify positions and grades of persons." Power was . conferred to create *new* positions and grades of persons, and when that was done the Board, under section 67, was given the power to fix salaries therefor. That it does not provide for or contemplate the creation of any power to increase salaries fixed by the current budget for positions provided for therein is clearly and conclusively shown by the fact that under section 67–2.0 of the Administrative Code the Legislature separately gave that power to the Board. It was not an emergency measure and it creates no emergency powers.

So far as the provisions of sections 67 and 68 have to do with the fixing of salaries, when read, as they must be, in connection with the provisions of the charter relating to the preparation and making of the budget and of the Administrative Code and having in mind the purposes of the budget when finally adopted, they relate only to the fixing of salaries for positions at the time of the preparation of the budget providing for those positions in connection with the

implied power under section 125, and then only subject to action by the Council and by the Mayor under sections 124 and 125, or for *new positions created at any time* after the adoption of a particular budget and before the adoption of its successor for a subsequent year. It cannot be presumed that the intent and purpose of those sections was to enable the Board of Estimate, in practical effect, *at any time* to nullify the purpose designed to be accomplished by the careful, well-considered and laborious preparation of the budget and thus to abrogate or hold at nought those provisions of the charter setting up the budget-making machinery (Cf. *Schieffelin* v. *Leary*, 219 App. Div. 660) or to make salaries attaching to positions duly created in a definite budget for a definite and predetermined period subject to adjustment, upwards or downwards, from time to time, or at any time, as the occasion or the whim or caprice of a Budget Director or the Board of Estimate might suggest. To hold otherwise would mean that the Board of Estimate alone could overthrow a budget completely the day following its effective date or at any subsequent time and thereby nullify the purpose and effect of the executive budget, the right of the public to notice and to be heard when positions are established and salaries fixed and the authority of the Mayor and the Council over such positions and salaries after the Board of Estimate has done its work. I am not prepared to accept any conclusion that makes the provisions of the charter for the preparation, adoption and finality of the budget so meaningless.

The order of the Appellate Division, in so far as it modified the order of the Special Term, should be reversed and, as so modified, the order appealed from and the order of the Special Term affirmed, with costs to the petitioners in this court and in the Appellate Division.

CRANE, Ch. J., LEHMAN and HUBBS, JJ., concur with LOUGHRAN, J.; FINCH, J., dissents in part in opinion, in which O'BRIEN, J., concurs; RIPPEY, J., votes for modification in separate opinion. (See 280 N. Y. 707, 846.)

Order affirmed.