In the Matter of the Application of EDWARD F. TORMEY and Others, Petitioners, against FIORELLO H. LAGUARDIA and Others, Respondents.

Supreme Court, Special Term, New York County, January 2, 1940.

*Irving Rivkin*, for the petitioners.

*William C. Chanler, Corporation Counsel* [*Samuel J. Silverman* of counsel], for the respondents.

McGoldrick, J. The three petitioners hold the positions of inspector of regulating, grading and paving, grade 3, bureau of engineering, in the office of the president of the borough of Richmond. On May 1, 1934, they were laid off for lack of funds. Then they were receiving these salaries: one (Tormey) $2,640 per annum; the other two (Herault and Dougherty) each $2,415 per annum. On August 8, 1934, they were reinstated to the same positions as per diem employees at eight dollars per day, with an appropriation sufficient to pay an average of only $2,000 per man in any one year or enough to pay each man for 250 days' work.

Petitioners seek an order whereby funds should be provided to make good alleged underpayments during the period from January 1, 1938, to June 30, 1939. They received their salaries at the former rate of compensation from the time of their reinstatement up to and including December 31, 1937. (See *Matter of Tormey* v. *LaGuardia,* 278 N. Y. 450; 279 id. 780.)

Petitioners base their claims on Local Law No. 26 of 1937 (city of New York), passed by both branches of the municipal assembly of the city of New York and approved by the mayor on June 28, 1937. It amended the Greater New York Charter by adding thereto a new section to take effect immediately and to read as follows: "Re-employment of persons on preferred civil service lists. Any person in the service of the city re-employed or reinstated since January first, nineteen hundred thirty-three, to the same or similar position he formerly held in the same or any other department of the city from a preferred civil service list established pursuant to section thirty-one of the Civil Service Law, shall on and after July first, nineteen hundred thirty-seven, receive at least the same salary such person received at the time his name was placed on the said preferred list." The question arises as to whether from January 1, 1938, to June 30, 1939, the defendants should be directed to pay petitioners " at least the same salary " they " received at the time " their names were " placed on the said preferred list;" and this in turn brings up for determination whether with respect to their compensation such local law was superseded or repealed.

Under legislative fiat (Laws of 1934, chap. 867, § 5) there was submitted to the qualified voters at the election held on November 3, 1936, the following question: " Shall the charter proposed by the New York city charter revision commission be adopted?" Therein it was provided: " If such question shall receive the affirmative. vote of a majority of the qualified electors voting thereon at such election, then such proposed charter shall be the charter of the city of New York and *shall become operative and effective at the time and in the manner prescribed therein.*" (Italics supplied.) It was adopted. The method of its adoption was held to be constitutional by the Court of Appeals. (*Matter of Mooney* v. *Cohen*, 272 N. Y. 33 [Oct. 1936].)

This " New York City Charter " took effect generally on January 1, 1938. (Charter, § 983.) It provides: " Salaries to be fixed by Board. § 67. The power is vested in, and it shall be the duty of the board of estimate, *except as otherwise provided* in this charter or *by statute*, to fix the salary of every officer or person whose compensation is paid from the city treasury, other than day laborers." (Italics supplied.) The salaries of these petitioners are not " otherwise provided in this charter or by statute." Clearly, then, on *their* face, the *discretionary power*, vested in the board of estimate by this section to fix the compensation of these petitioners, is inconsistent with the *mandatory requirement* of Local Law No. 26 of 1937, that they " *shall* on and after July first, nineteen hundred thirty-seven, receive at least the same salary such person received at the time his name was placed on the said preferred list."

The charter also provides: " Effect of this charter on existing law. § 982-a. All laws and parts of laws relating to or affecting the city of New York or the municipalities consolidated therein in force when this charter shall take effect are hereby repealed and superseded to the extent that the same are inconsistent with the provisions of this charter, and no further."

Consequently, to the extent indicated, such local law is superseded by the charter.

Confronted with this statutory impasse, specifically called to the attention of counsel upon a hearing recently held, petitioners in additional memoranda since submitted seek refuge in the " Administrative Code of the City of New York " (Laws of 1937, chap. 929), which also took effect generally on January 1, 1938. Therein is found verbatim Local Law No. 26 of 1937 (Code, § B40–6.1), by reason of the inclusion of which it is urged on behalf of petitioners that it remained in full force and effect after such date. This is true except as to the parts thereof which " are hereby repealed and superseded to the extent that the same are inconsistent with the provisions of this charter." (Charter, § 982-a, *supra*.)

But, say the petitioners: " Section B40–6.1 which took effect on January 1, 1938, the same date as the charter took effect, is the latest enactment and controls this situation." In my opinion this contention is unsound. The reverse is the fact. The rule of statutory construction here applicable dictates that the section is not the " latest enactment " and that in case of conflict between the charter and the Administrative Code the charter controls. A study of some relevant provisions, it seems to me, will render this conclusion irresistible.

Section B40–6.1 of the Code did not take effect on January 1, 1938; it took effect on June 28, 1937. The Code is *not a new enactment;* it is a *re-enactment;* it is a *restatement and codification.* Consequently, and because of the expressed intention of the Legislature (Laws of 1934, chap. 867, Laws of 1936, chap. 483 and Laws of 1937, chap. 929) section 67 of the charter is a later enactment by six months.

" Code; a *restatement* and *codification.*—The *purpose* of this Code is *solely to codify and restate present existing statutes and laws,* general, special and local, except in instances where changes are necessary to conform such *statutes and laws* to the New York City charter." (Code, § 1–0.0.)

" If in this Code there shall have been incorporated any provision of law, general, special or local, or a provision of any ordinance, that heretofore shall have been superseded or specifically or impliedly repealed, the incorporation of any such provision shall not revive

such superseded or repealed provision, *nor shall such incorporation be construed to indicate any legislative determination that such provision had not been theretofore so superseded or repealed.*" (Code, § 982–1.0.) (Italics supplied.)

" For the purpose of determining the effect of any statute, heretofore enacted and not specifically repealed by this act, upon any provision of the Code, such provision shall not be considered a *new enactment* if it re-enacts any prior law, but shall be construed to be a *reenactment and continuation* of the last amendment of the law so reenacted." (Code, § 983–1.0, subd. b.)

" It is the intent of the Legislature by this act to provide an administrative code for the city of New York *harmonizing* with the provisions of the New York city charter. In so far as this act revises, consolidates, codifies, *continues or restates* the provisions of any *statutes, local laws* or ordinances, applicable to the city of New York and *in force on December thirty-first, nineteen hundred thirty-seven,* such provisions shall be deemed *unchanged in substance and effect except as may be necessary to harmonize them* with the New York city charter." (Code, § 982–1.0.)

On the question of control where there exists between the charter and the Code the inconsistency to which reference has heretofore been made (Charter, § 67; Code, § B40–6.1), the title of the act creating the latter is also significant: " An Act to provide an administrative code for the city of New York *in harmony with and supplemental* to the New York city charter." (Laws of 1937, chap. 929.)

There is another stumbling block directly in the way of these petitioners on their road to success on this application. Considering alone the wording of charter section 67, *supra,* as it reads and is here applicable, the only restriction on the exercise of the power vested in the board of estimate to fix the salaries of these petitioners is where they are " otherwise provided * * * by *statute.*" The charter has been held to be tantamount to a statute. (*Matter of Finegan* v. *Cohen,* 275 N. Y. 432, 439.) Local Law No. 26 of 1937, effective as of June 27, 1937, and the " re-enactment and continuation " of which is in identical language contained in Code section B40–6.1, is not a " statute." The Code itself, of which it is a part, defines what is meant by " statute:" " Definitions. * * * ' Statute.' Any enactment of the Legislature of the State of New York." (Code, § 981–1.0, subd. 13.) In common parlance and as generally understood a " statute " is the result of the combined action of the Legislature and of the Governor on a bill. An examination of the Code provisions, *supra,* and of many others found therein, makes apparent an intent to recognize a distinction between a " statute " and a " law." A " statute " is a " law;" but the converse is not true. Therefore, while the

petitioners rely for the fixation of their compensation upon such " local law," which is not a " statute," they do not come within the inhibition on the power of the board of estimate to do so in the present situation.

Under the new charter the first fiscal year was established to " commence on the first day of July, nineteen hundred thirty-nine." (Charter, § 952-a.) In the year 1937 a city budget was prepared and adopted " for the calendar year nineteen hundred thirty-eight " and " for the period commencing on the first day of January, nineteen hundred thirty-nine, and ending on the thirtieth day of June, nineteen hundred thirty-nine." (Charter, § 952-b.) The validity of this budget was upheld in *Dixon* v. *LaGuardia* (277 N. Y. 84). It includes items pertaining to the salaries of petitioners on the basis of a total maximum compensation for each of eight dollars a day for 250 days, or $2,000 per annum. With ample power and authority so to do, it is noted that the salaries of petitioners were duly fixed at budget-making time. (*Rushford* v. *LaGuardia*, 280 N. Y. 217.)

The claim of petitioners that there was a reduction of salary below the minimum of their grade is not founded in fact. In the competitive class the salary range of the various grades is determined by the rules of the Civil Service Commission. (Civ. Service Law, §§ 10, 11.) The rule of the Commission relating to classification of positions in the inspection service reads:

" The positions in the Inspection Service are graded according to the amount of annual compensation *or* to its hourly, daily or weekly equivalent upon a basis of three hundred working days per annum, attaching to each as follows:

" Grade 1 — $1,200 annually,
" Grade 2 — $1,800 annually,
" Grade 3 — $2,400 annually,
" Grade 4 — $3,000 annually or over."

Thus it is apparent that while " the amount of *annual compensation* " is a minimum of $2,400, under the disjunctive " *or* " the minimum salary for *per diem positions* is " its * * * daily * * * equivalent upon a basis of three hundred working days per annum." Dividing the " basis " of 300 working days into 2,400 gives the " daily * * * equivalent " of eight dollars per day, which is the minimum salary for per diem employees and which salary petitioners received. Assuming, however, that the salaries were below the minimum of their grade, the contention that at budget-making time they could not be validly reduced is untenable. ( Noonan, J., in *Conroy* v. *LaGuardia*, N. Y. L. J. Dec. 8, 1939, p. 2036.) The budget-making authorities were vested with ample power to reduce appropriations for these positions, provided

only that they did not violate any statutory prohibition. No such violation is present. The exercise of such power here was not limited by provisions of the Civil Service Law nor was it affected by the classification of these positions by the municipal civil service commission. (All italics mine.)

The motion is denied.