In the Matter of JOHN BRODERICK et al., Respondents, against CITY OF NEW YORK et al., Appellants, et al., Defendants.

Reargued January 15, 1946; decided June 13, 1946.

*Ignatius M. Wilkinson, Corporation Counsel* (*Seymour B. Quel* and *Harry Hollander* of counsel), for City of New York and others, appellants. I. The modifications of the budgets for the fiscal years 1942–43 and 1943–44 so as to provide for ten additional deputy chiefs were validly made by the budget director and the comptroller in accordance with the terms and conditions of the budgets. (*Matter of Rushford* v. *La Guardia,* 280 N. Y. 217, 280 N. Y. 707; *Matter of Daly* v. *McGoldrick,* 280 N. Y. 210; *Matter of Staudt* v. *McGoldrick,* 280 N. Y. 675; *People ex rel. Plancon* v. *Prendergast,* 219 N. Y. 252; *Matter of Dobrovolny* v. *Prendergast,* 219 N. Y. 280; *French* v. *Weeks,* 259 U. S. 326; *Hannibal Bridge Co.* v. *United States,* 221 U. S. 194; *Lloyd Royal Belge Societe Anonyme* v. *Elting,* 61 F. 2d 745; *The City of Harvard,* 52 F. 2d 461.) II. The Board of Estimate may transfer appropriations within the budget during the fiscal year. The power of the Board of Estimate to make such transfers is a valid basis for the limited power of the budget director and the comptroller to transfer appropriations from one line to another within a code in the budget at the request of a department head. (*Matter of Weldon* v. *Rheinstein,* 101 N. Y. L. J. 2606, June 6, 1939, 259 App. Div. 860, 283 N. Y. 753; *Matter of Lange* v. *McGoldrick,* 103 N. Y. L. J. 456, Jan. 29, 1940; *Matter of O'Connor* v. *Kern,* 103 N. Y. L. J. 1213, March 16, 1940; *Matter of Divisich* v. *Marshall,* 257 App. Div. 294, 281 N. Y. 170.)

*Edward G. Bathon* and *Charles R. Barrett* for James W. O. Wood and others, appellants. I. The Board of Estimate is vested with the power to abolish and create positions during the course of the budgetary year. (*Matter of Weldon* v. *Rheinstein,* 259 App. Div. 860, 283 N. Y. 753; *Matter of Lange* v. *McGoldrick,* 103 N. Y. L. J. 456, Jan. 29, 1940; *Lederer* v. *Wise Shoe Co.,* 276 N. Y. 459; *Matter of Rouss,* 221 N. Y. 81.) II. The Board of Estimate may by inclusion of appropriate terms and conditions in the budget validly delegate to the budget director the power to modify the budget by transfer of appropriations between codes. (*Matter of W. S. A. & P. R. R. Co.,* 115 N. Y. 442; *People ex rel. Plancon* v. *Prendergast,* 219 N. Y. 252; *Matter of Dobrovolny* v. *Prendergast,* 219 N. Y. 280; *Matter of Daly* v. *McGoldrick,* 280 N. Y. 210.)

*Albert De Roode* for respondents. I. The purported establishment by the budget director of these additional offices of deputy chief was invalid because contrary to the restrictions of sections 127 and 128 of the New York City Charter. II. The ten new offices of deputy chief in the Fire Department were not validly created even under the " terms and conditions " of the budget because the comptroller did not approve of such " modification " of the budget nor countersign the certificate of the budget director purporting to modify the budget. (*Matter of Hines* v. *La Guardia,* 293 N. Y. 207; *Ontario Knitting Co.* v. *State,* 205 N. Y. 409.) III. The Board of Estimate was impotent through the mechanism of " terms and conditions " to assign to the budget director or the comptroller any power in respect of modifying the budget after it was adopted because these two officials were ineligible to exercise such power sought to be imposed upon them by the terms and conditions. (*Matter of Natilson* v. *Hodson,* 264 App. Div. 384, 289 N. Y. 842; *Matter of Hines* v. *La Guardia,* 293 N. Y. 207.) IV. The Board of Estimate could not delegate to others its duties and powers in respect to modification of the budget or the creation of additional offices or the fixing of salaries. (*Matter of Rushford* v. *La Guardia,* 280 N. Y. 217, 280 N. Y. 846; *Ontario Knitting Co.* v. *State,* 205 N. Y. 409; *Birdsall* v. *Clark,* 73 N. Y. 73; *Matter of Pet. of Emigrant Ind. Sav. Bank,* 75 N. Y. 388; *Phelps* v. *Mayor,* 112 N. Y. 216.) V. The Board of Estimate was without

power at budget-making time or any other time to establish positions for an "unlimited number" of positions. (*Schechter Corp.* v. *United States*, 295 U. S. 495.) VI. The additional ten offices of deputy chief could be created by the Board of Estimate, or the budget director, only at budget-making time. (*Matter of Rushford* v. *La Guardia*, 280 N. Y. 217, 280 N. Y. 846.)

*H. H. Nordlinger* and *J. M. Dinnes* for Citizens Budget Commission, Inc., *amicus curiæ*, in support of respondents' position. I. The power of creating positions is vested by section 68 of the Charter in the Board of Estimate. This power could not lawfully be delegated by that body to a subordinate administrative officer, appointed by the Mayor. (*People* v. *Klinck Packing Co.*, 214 N. Y. 121; *Ontario Knitting Co.* v. *State*, 205 N. Y. 409; *Matter of Rushford* v. *La Guardia*, 280 N. Y. 217; *Carlton* v. *City of Marshalltown*, 212 Iowa 373, 380.) II. Section 123 of the Charter, which in prescribing the form of the budget, authorizes the Board of Estimate to "set forth the terms and conditions under which such appropriations shall be administered" does not by implication authorize the Board of Estimate to delegate to the budget director, with the countersignature of the comptroller, a power to create new offices. Accordingly, so much of the "terms and conditions" of the budget as purports to delegate this power is invalid. (*Matter of Natilson* v. *Hodson*, 264 App. Div. 384; *People ex rel. Collins* v. *Ahearn*, 120 App. Div. 95; *Lyons* v. *City of New York*, 82 App. Div. 306, 176 N. Y. 609; *Matter of Collins* v. *City of Schenectady*, 256 App. Div. 389; *Matter of Wingate* v. *McGoldrick*, 279 N. Y. 246.) III. Authority cannot be found for the budget director's action in section 128 of the Charter. IV. The practice sought to be justified cannot be sustained on the alleged ground of convenience or of administrative construction. (*Matter of Hines* v. *La Guardia*, 293 N. Y. 207; *Neuberger* v. *Commissioner*, 311 U. S. 83; *United States* v. *San Francisco*, 310 U. S. 16; *Estate of Sanford* v. *Commissioner*, 308 U. S. 39; *City of New York* v. *New York City Ry. Co.*, 193 N. Y. 543; *People ex rel. W. S. El. Co.* v. *C. T. & E. S. Co.*, 187 N. Y. 58; *Burns* v. *Weber*, 171 Misc. 808; *Matter of Davison*, 137 Misc. 852, 236 App. Div. 684; *Matter of Naughton* v. *Boyle*, 129 Misc. 867.) V. The action of the budget director, which has been held illegal

by the courts below, is not saved by the provision in the budget purporting to create " an unlimited number " of positions in every department.

LOUGHRAN, Ch. J. In June, 1943, the Budget Director of the City of New York with the concurrence of the Comptroller modified the expense budget of the city for the fiscal year 1942–1943 by eliminating ten positions of battalion chief in the Fire Department and by creating therein ten additional positions in the next higher rank of deputy chief. The ten additional positions were then filled by way of promotion thereto of ten battalion chiefs. A battalion chief was paid $5,300 and a deputy chief $6,300 annually. The fiscal year 1942–1943 ended on June 30, 1943. On the following day the Budget Director and the Comptroller issued a further order directing the continuance of the ten additional positions under the expense budget for the fiscal year 1943–1944.

In so reconstructing the budgets in question, the director supposed that he was acting by the authority of the Board of Estimate of the city. His profession of such jurisdiction has been rejected by the courts below. By leave of the Appellate Division, the city is the appellant here.

(1) Fundamental in its argument is an insistence that the controversy is ruled by section 68 of its municipal charter (New York City Charter [1938]). The text of that section is as follows: " The board of estimate may at any time, subject to the provisions of this charter and of the civil service law and except as otherwise provided by statute, create, abolish or modify positions and grades of persons paid from the city treasury." These words were construed by this court in Matter of Rushford v. LaGuardia (280 N. Y. 217). We there held: First: The phrase " create, abolish or modify positions and grades of persons " does not mean " reduce the salary of any person." Second: The power conferred by section 68 can be exercised by the Board of Estimate only when it adopts a budget.

Since the first of those two propositions was enough to dispose of the Rushford case, the city now maintains that the second proposition was a mere obiter dictum. This is a misconception. Indeed, when two or more points arise and are argued and the appellate court passes upon them all, no branch of the decision is merely incidental, but all the grounds thereof must be taken

to be equal in force and together constitute the judgment (*O'Brien* v. *Union Central Life Ins. Co.*, 207 N. Y. 180, 187; *Matter of Fay*, 291 N. Y. 198, 215. See *United States* v. *Title Ins. Co.*, 265 U. S. 472, 484; *Richmond Co.* v. *United States*, 275 U. S. 331, 340; *Cheater* v. *Cater*, [1918] 1 K. B. 247, 252–253; *London Jewellers, Ld.*, v. *Attenborough*, [1934] 2 K. B. 206, 222).

Though the second basis of our decision of the *Rushford* case was plainly stated (280 N. Y. at p. 232), the reasons given therefor seemingly need a new emphasis and so we shall here go over the same ground once more. The present charter of the City of New York was drafted by a Charter Revision Commission and was adopted by the electors of the city at the polls, after the commission had published a report in respect of the design and range of the instrument (see L. 1934, ch. 867). In that address, the commission said: " The annual expense budget is to be prepared by the Budget Director and presented by the Mayor for adoption by the Board of Estimate and the Council, very much as this is now done. * * * In addition to the law-making power, which will constitute its chief function, the Council will also retain the important power of adopting the expense budget * * *. The Board of Estimate remains as at present, composed of the Mayor, the Comptroller, the President of the Council, each with three votes, the Borough Presidents of Manhattan and Brooklyn, with two votes each, and the presidents of the boroughs of The Bronx, Queens and Richmond with one vote each. The Board of Estimate * * * passes upon the Mayor's budget and is free to amend it by adding, increasing, decreasing or omitting items. After the Board of Estimate has passed the budget, it goes to the Council, which may reduce or strike out the amounts appropriated for particular items. The Board of Estimate holds hearings so that it is before this small body of elected officers that the people have an opportunity to criticize the budget or any item in it." Thus the charter was designed to give effect to the historic principle that any tax measure ought to have its origin in the public will. When section 68 is read against that background, the limits thereof are scarcely open to misapprehension. But however this may be, at least that section cannot be taken to be a license to the Board of Estimate at its

pleasure to set at naught the budget-making machinery else-where so carefully dictated by the same document. We reaffirm, therefore, the second ground of our decision in the *Rushford* case, viz.: Section 68 empowers the Board of Estimate to create, abolish or modify positions only when it adopts a budget (280 N. Y. at p. 222).

(2) Section 123 of the city's charter requires that the code items of an expense budget " shall set forth the terms and conditions under which such appropriations shall be admin-istered." Under the caption " TERMS AND CONDITIONS," each of the budgets in question made this provision: " 3. Modifica-tion of Schedules: Any schedule supporting an appropriation for personal service contained in this budget may be modified at any time * * * by adding new positions under new or existing titles * * * but only by resolution of the Board of Estimate, or by the issuance of a certificate by the Director of the Budget, countersigned by the Comptroller, approving such modification * * *. Such modification may be made by the Director of the Budget, countersigned by the Comptroller, upon request or consent of the head of the agency * * *." The " TERMS AND CONDITIONS " of each of the budgets in question also contained a resolution of the Board of Estimate declaring that positions and wages as they then appeared in the budget were established and fixed " for an unlimited number of incumbents."

On the strength of these budget recitals, the city argues that when the director here modified the budgets by adding ten to the number of deputy chiefs originally authorized at $6,300 per annum, he was " merely making provision for additional incumbents of a position already created at the rate, established therefor by the original budget." This undoubtedly is true as a matter of form, but is by no means a solution of the case. Any process whereby the expense budget of a city may be thus summarily realigned to the length of " an unlimited number of incumbents " is surely an affair that calls for a clear warrant of law.

Section 128 of the city's charter is said to be such a warrant. It is thereby provided: " The director of the budget, upon request of the head of an agency, shall, with the approval of the board of estimate, have power during any fiscal year to transfer an appropriation or part thereof from one line to another within the same schedule, provided the total appropriation for

the applicable code item is not increased. A copy of the line affected, as amended, shall forthwith be filed by the director of the budget with the treasurer and the comptroller.'' But section 128 is silent both as to '' new positions under new or existing titles,'' and as to '' an unlimited number of incumbents.'' On the other hand, the section does say that all transfers of appropriations made thereunder by the budget director are conditioned upon the '' approval '' of the Board of Estimate. To our minds such '' approval '' means that the board itself must first be satisfied with each separate transfer order made by the budget director. A like question arose in *Brown* v. *Newburyport* (209 Mass. 259). In that case a city treasurer was authorized to borrow '' from time to time, with the approval of the committee on finance ''. RUGG, J., said for the court (p. 266) : '' Approval, in this connection, means that the members of the finance committee, acting upon their official responsibilities and having in view the public welfare, shall investigate and sanction according to their own independent judgment, each separate borrowing made under the order. It implies reflection and sound business discretion as to each loan proposed. It did not confer a mere ministerial function, but imposed active and important prudential obligations.'' In that view, which we believe to be sound, the official duty of the Board of Estimate under section 128 — the duty to pass judgment upon actual transfers of appropriations — cannot be delegated. In a word, we are unable to find in section 128 any warrant whatsoever for the course here pursued by the budget director.

Nor can we see any ground upon which the scope of section 128 can be deemed to have been enlarged through administrative construction. The charter was adopted by the voters of the city at the general election of 1937. A preliminary draft thereof was published by the Charter Revision Commission on April 27, 1936. What is now section 128 was in that draft numbered 129. The phrase '' with the approval of the board of estimate '' was not contained therein. At a public hearing held by the commission on May 11, 1936, Mr. Harold Riegelman, on behalf of the Citizens Budget Commission, urged that a number of procedures which were included in the '' TERMS AND CONDITIONS '' of the 1936 budget should be written into the charter. He went on to say: '' While none of the foregoing provisions of the existing terms and conditions are written into the proposed

charter, an objectionable existing provision is found in section 129, which permits the budget director, without the approval of the Board of Estimate, to modify appropriations within codes. This provision, in our opinion, has led to abuses in that it opens the way to surreptitious salary increases by covering up the amounts appropriated for useless positions which have become vacant and which would otherwise accrue to the end of the budget year and then be eliminated.'' (See minutes of public hearing held by New York City Charter Revision Commission, May 11, 1936.) The Charter Revision Commission thereafter amended the then section 129 by adding thereto the words '' with the approval of the board of estimate ''. (See minutes of executive meetings of New York City Charter Revision Commission held June 23 and 25, 1936.) Against such a background, we take section 128 to be a limitation upon the practice that had previously been made use of by the budget director in his handling of appropriations within codes, and hence section 128, in our judgment, cannot be controlled by that antecedent practice. Whether section 128 has been subjected to any official interpretation since it became effective in 1938, is, of course, of no significance (*Grimmer* v. *Tenement House Department*, 205 N. Y. 549, 550; *Lawrence Construction Corp.* v. *State of New York*, 293 N. Y. 634).

(3) Considering the case in the above aspects, we conclude, that the method of the creation of the ten additional positions of deputy chief in the Fire Department was not authorized by law, as the courts below have held.

MEDALIE, J., participated in the decision of this case and voted for affirmance.

The order should be affirmed, with costs.

THACHER, J. (dissenting). Following the adoption of the three-platoon system, which imposed upon the Fire Department of the City of New York an eight-hour day, the administration of this department required a substantial increase in a number of higher ranking officers; consequently, when a number of vacancies occurred in June, 1943, the Fire Commissioner was confronted with the following situation:

There were five vacancies in the office of deputy chief. Two deputy chiefs were on military leave and one had been appointed a deputy commissioner. On June 26, 1943, the commissioner

requested the budget director to approve filling the five existing vacancies in the position of deputy chief and a modification of the budget which would permit the appointment of ten additional deputy chiefs. This request was considered and approved by the budget director and the comptroller through his deputy, whereupon the budget director issued his certificate No. –M–1171 reading as follows:

"June 26, 1943.

Record No. 5038
Certificate No. –M–1171
HON. PATRICK WALSH,
Fire Chief and Commissioner,
Municipal Building,
Manhattan, New York, N. Y.

DEAR SIR:

Under date of June 26, 1943, you requested that personal service schedule 5805–001, Budget for 1942–43 be modified by providing for ten (10) additional positions of Deputy Chief at $6300 per annum.

Your request is approved, except that the resulting vacancies of Battalion Chief at $5300 per annum are eliminated, and in order to effect these changes, the personal service schedule pursuant to the provisions of the Terms and Conditions of the Budget for 1942–43, is hereby modified effective June 26, 1943, as follows:

FIRE DEPARTMENT

Code 5805–001

| Line | | Eliminate | | Substitute | |
|------|------|------|------|------|------|
| 7 | Deputy Chief ...... | 47 @ $6300 | $296,100 | 57 @ $6300 | $359,100 |
| 8 | Battalion Chief ..... | 160 @ 5300 | 848,000 | 150 @ 5300 | 795,000 |
| | Schedule Total ..... | | $33,125,831.00 | | $33,135,831.00 |
| | Less Required Accruals ......... | | 643,700.00 | | 653,700.00 |
| | Code Total ......... | | $32,482,131.00 | | $32,482,131.00 |

Very truly yours,

T J P     6/26/43
THOMAS J. PATTERSON
*Director of the Budget.*

Concurred in by:
JOSEPH D. McGOLDRICK,
*Comptroller*
     L. F. LANG     6/26/43
*Secretary to the Department.*
RC "

Another certificate authorized the Fire Commissioner to fill fifteen vacancies in the position of deputy chief by appointment from the civil service list. These fifteen vacancies were the five vacancies existing in the position of deputy chief prior to the modification of the budget plus the ten vacancies created as a result of the modification. These positions were continued in the budget for the next fiscal year by the issuance of a similar certificate of authorization dated July 1, 1943.

Although we concur with the statement of the decision in *Matter of Rushford* v. *La Guardia* (280 N. Y. 217) which appears in the opinion of the majority of the court, we do not understand that the interpretation of section 68 of the New York City Charter, involved in that case, is pertinent to the interpretation of sections 123 and 128 of the same charter, involved in this case. Section 128 of the charter, under which the appellants claim that the budgetary transfers here in question were authorized, provides: " § 128. TRANSFERS OF LINES WITHIN SCHEDULES.— The director of the budget, upon request of the head of an agency, shall, with the approval of the board of estimate, have power during any fiscal year to transfer an appropriation or part thereof from one line to another within the same schedule, provided the total appropriation for the applicable code item is not increased. A copy of the line affected, as amended, shall forthwith be filed by the director of the budget with the treasurer and the comptroller."

Decision turns upon the meaning of the words, " The director of the budget, * * * shall, with the approval of the board of estimate, have power during any fiscal year to transfer an appropriation ". A majority of the court have concluded that these words require specific approval by the Board of Estimate of every transfer under section 128, but the approval contemplated by this language is not of any specific act but of the budget director having " power during any fiscal year to transfer an appropriation ". Such approval is evidenced by the express grant of such power by resolution of the Board of Estimate fixing the terms and conditions under which the budget for the· City of New York for the fiscal year from July 1, 1942, to June 30, 1943, should be administered.

This practice was authorized by section 123 as follows: " The budget so adopted shall be in such form as to provide appro-

priations for code items only, but such code items shall, except where the board of estimate makes a finding that it is impossible, be accompanied by supporting line schedules and *shall set forth the terms and conditions under which such appropriations shall be administered.*" (Emphasis supplied.)

Section 123 speaks of "appropriations", "code items", "line schedules" and "terms and conditions under which appropriations shall be administered", and section 128 speaks of "power during any fiscal year to transfer an appropriation or part thereof from one line to another within the same schedule" and of "the total appropriation for the applicable code item". These are words of art which take their meaning from the practical process of budget making in New York City. They can best be understood by looking at the budget itself. For example, we are concerned in this case with transfers of an appropriation from one line to another within one of the personal service schedules of the Fire Department which carry the appropriations for salaries of regular employees. The particular schedule, appearing on page 190 of the budget, is "5805–001, Uniformed Force, including Medical Officers, Etc." It is made up of twenty lines. The lines we are concerned with in this case are lines 7 and 8 which read as follows:

"7. Deputy Chief ......... 47 at 6,300    296,100.00
 8. Battalion Chief ....... 160 at 5,300    848,000.00"

The twenty lines in this schedule carry appropriations aggregating $33,125,831, from which required accruals of $643,700 are deducted, the remaining $32,482,131 representing the "code total". This is "the total appropriation for the applicable code item". Published with the budget for 1942 to 1943 are two resolutions of the Board of Estimate, one fixing the "terms and conditions" under which the budget should be administered (Budget, p. 1), and the other establishing positions and fixing salaries (Budget, p. 7).

Since the transfer of appropriations here in question involved a modification of the schedule and the filling of existing vacancies, we must look to these "terms and conditions" for the grant of power which was exercised by the budget director. The first resolution reads in part as follows: "Resolved, By the Board of Estimate, that the budget for The City of New York

for the fiscal year from July 1, 1942 to June 30, 1943 shall be administered under the following terms and conditions set forth pursuant to section 123 of the New York City Charter, and to be changed only by resolution of the Board of Estimate: * * * '' These terms and conditions in large part relate to '' PERSONAL SERVICE ''. Paragraph 2 under this main heading relates to vacancies and provision is made that no vacancy in any schedule supporting appropriations for personal service shall be filled except upon a certificate issued by the Director of the Budget and then only upon the terms contained in such certificate. The procedure for issuing such certificates, filing a copy with the comptroller and furnishing to each member of the Board of Estimate and to the secretary of such board a monthly schedule of certificates issued is outlined and there is no contention that these provisions were not complied with in connection with the filling of vacancies involved in this case.

Paragraph 3 under this main heading reads as follows: '' 3. Modification of Schedules: Any schedule supporting an appropriation for personal service contained in this budget may be modified at any time by increasing or decreasing the rate of compensation or the number of days or period of time provided for any position, by changing titles, by adding new positions under new or existing titles or by eliminating positions provided in such schedule, but only by resolution of the Board of Estimate, or by the issuance of a certificate by the Director of the Budget, countersigned by the Comptroller, approving such modification, and upon such terms and conditions as may be included in the certificate. Such modification may be made by the Director of the Budget, countersigned by the Comptroller, upon request or consent of the head of the agency * * *.

'' Modifications involving transfer of funds between appropriations, or the establishment of a position or grade of position, shall not be approved by the Director of the Budget until such transfer of funds or the establishment of the position or grade of position shall have been approved by resolution of the Board of Estimate, or such establishment has been legally approved.''

Since section 123 of the charter requires the budget to be in such form '' as to provide appropriations for code items only '', we must understand the term '' transfer of funds between appro-

priations '' as having no application to the transfer of funds between lines in a supporting line schedule.

The resolution establishing positions and fixing salaries is as follows:

'' ESTABLISHMENT OF POSITIONS AND FIXATION OF SALARIES

'' Resolved, That the Board of Estimate hereby establishes positions, titles of positions and grades of positions and fixes the salaries of such positions, as follows:

'' First, That all positions, titles of positions and grades of positions in the budget for the fiscal year 1942–1943 under the classification ' Personal Service ' be established in all agencies at all the annual, monthly, weekly, per diem, per entry, per abstract, per hourly, per summons, or per folio rates appearing in the budget for the said fiscal year 1942–1943 for an unlimited number of incumbents in all such agencies, and also at the following rates:    *    *    *  ''

Thus the positions of deputy chief and battalion chief were established with relation to titles, grades and rates of pay, and the certificate of the budget director, issued upon request of the head of the department and approved by the comptroller, was an effective exercise of the power granted pursuant to section 128 of the Charter by the resolution of the Board of Estimate adopted pursuant to section 123 of the Charter. The exercise of such power was conditioned upon a request of the head of the department approved by the comptroller. These conditions were complied with.

Similar transfers of appropriations from one line to another in the same schedule are of daily occurrence throughout the departments of the city government. The volume of such adjustments within a single year is enormous. Positions affected by such modifications in the budget during the year 1943 to 1944 exceeded 68,000. Considering that there were approximately 155,000 positions provided for in the budget of 1942 to 1943, it is not surprising that many changes should be inevitable '' during any fiscal year ''. The personal service schedules provide for all grades and kinds of employees who are considered necessary to carry on the manifold activities of the city. In this enormous undertaking it is inevitable that the need for more of one group and less of another should frequently change and require adjustment '' during any fiscal year ''. Efficient administration requires that such adjustments

be made without delay. Cursory examination of the personal service schedules in the various departments of the city discloses an infinite variety of civil servants trained for special tasks. The demands for such services inevitably vary from the budget estimates. Instead of permitting employment of additional employees to meet unexpected demands, the practice is, as in this case, to transfer appropriations from one line to another in a single schedule but always without increasing the total code appropriation. Under the provisions of section 128 and the terms and conditions prescribed by the Board of Estimate, three responsible executives exercise this responsibility. This flexibility in no sense impairs the principle of budgetary control because " the applicable code item is not increased ", and nothing is to be accomplished except confusion and delay by adding to the limitations imposed upon the grant of power authorized by section 128 a requirement that each exercise of that power shall be specifically approved by the Board of Estimate before it becomes effective.

The administrative procedure has imposed no such requirement. Ever since 1929 the budgets of the city in their " terms and conditions " have authorized the budget director to modify personal service schedules within code appropriations and to grant permission to fill vacancies in positions occurring during the course of the fiscal year. From that time to this that practice has continued and was in effect when the charter was adopted. It cannot be doubted that the members of the Charter Revision Commission were fully aware of the existing practice, for the statute under which the commission was constituted imposed upon the commission the duty of making " a study and analysis of the existing governmental structure of the city of New York and of the several counties therein contained for the purpose of securing such factual data as will enable it to draft, and the commission is hereby directed to draft a proposed new charter, adapted to the requirements of such city and designed to provide for the people of such city a more efficient and economical form of government." (L. 1934, ch. 867, § 3; see, also, Report of the New York City Charter Revision Commission, Aug. 17, 1936). There is nothing in the Charter or in the Commission's report to indicate an intention to change this practice. It is suggested that a change made in the preliminary draft of the charter published April 27,

1936, before the charter was filed with the City Clerk for submission to the electorate of the City, indicates that the Commission intended to change the prevailing practice with respect to the power of the budget director to transfer lines within schedules. The fact is that the provision of the preliminary draft departed from that practice, and the change which appears in the charter as adopted was made to conform to that practice. The preliminary draft contained a direct grant of power to the budget director and required no approval of such a grant by the board of estimate. The practice had been for the board of estimate to authorize transfers by the budget director during the fiscal year in the resolution setting forth the terms and conditions for the administration of the budget, which was published with the budget. In the preliminary draft the clause read: " shall have power during any fiscal year to transfer "; the change was to insert the words " with the approval of the board of estimate " after the word." shall " so that the clause read: " shall, with the approval of the board of estimate, have power during any fiscal year to transfer ". The effect of this change was to require the approval of the grant of power, not of its exercise. That was what had been done since 1929. The preliminary draft was a radical departure from the old practice because it made a direct grant of power which required no approval, either of the grant or of the exercise of the power. The language of section 128 requiring approval by the Board of Estimate, not of specific actions, but of the possession by the director of the budget of " power during any fiscal year to transfer an appropriation or part thereof from one line to another within the same schedule, provided the total appropriation for the applicable code item is not increased ", exactly accords with the established practice and safeguards that practice against abuse by the proviso that " the total appropriation for the applicable code item is not increased." It should be emphasized that this express proviso not only prevents any expenditure in excess of the appropriation which the Board of Estimate has authorized for the administration of the agency or department, but, by limiting the authority to transfers " from one line to another within the same schedule ", prevents the expenditure of any funds for a purpose not specifically authorized by the Board of Estimate.. The system prescribed by the Charter pursuant to

the mandate of the Legislature was designed to afford the flexibility which is necessary to efficient administration without the surrender of responsible budgetary control and of course the Board of Estimate may withdraw the grant of power at any time or change the practice as it sees fit and may prescribe Board of Estimate approval for every transfer if that is considered desirable. This it has never done.

Consistent and continuous administrative practice under the New York City Charter shows that the responsible city officials charged with the duty of administration of the budget, including the members of the Board of Estimate, have at all times thus understood and construed these Charter provisions. Under these circumstances, that settled construction of the law should be accepted. (*Bullock* v. *Cooley*, 225 N. Y. 566, 571; *Grimmer* v. *Tenement House Department*, 205 N. Y. 549; *Kings County Lighting Co.* v. *City of N. Y.*, 176 App. Div. 175, 181.)

In *Norwegian Nitrogen Co.* v. *United States* (288 U. S. 294) Mr. Justice Cardozo had occasion to say (p. 311): " The administrative practice before the Act of 1922 might be too desultory and brief to fix the meaning of the statute if it did not find support, and that unmistakable and ample, in administrative practice afterwards ", and, further (at p. 315): " True indeed it is that administrative practice does not avail to overcome a statute so plain in its commands as to leave nothing for construction. True it also is that administrative practice, consistent and generally unchallenged, will not be overturned except for very cogent reasons if the scope of the command is indefinite and doubtful. [Citing cases.] The practice has peculiar weight when it involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new. [Citing case.] " Here we have just such a case.

It is our view that the transfers were authorized and that the orders appealed from should be reversed and the proceedings dismissed, with costs.

Lewis, Conway and Medalie, JJ., concur with Loughran, Ch. J.; Thacher, J., dissents in opinion in which Desmond and Dye, JJ., concur.

Order affirmed.