COUNTY OF ONONDAGA, Plaintiff, *v.* WILLIAM AUNGIER and Others, Defendants.

Supreme Court, Onondaga County, October 30, 1931.

*Truman H. Preston,* for the plaintiff.

*George W. O'Brien,* for the defendants.

CREGG, J. This is a condemnation proceeding brought by the plaintiff county under sections 148–150 of the Highway Law to acquire approximately six and one-third acres of defendant's farm for the purpose of constructing the State highway known as the " Cherry Valley Road." The proceeding was commenced on April 25, 1931, by the service upon defendants of the usual petition in condemnation together with a notice of hearing for the Special Term held May 4, 1931. Defendant failed to appear in court at that time, and a default judgment in condemnation was entered June 2, 1931. Later, on application of the defendant, his default was opened and he was permitted to answer the petition. The issue made by the petition and answer are now before the court for determination.

The defendant William Aungier is the owner of a farm of approximately 150 acres situate in the town of Lafayette, Onondaga county, about midway between the villages of Lafayette and Cardiff. Defendant Lucy Aungier is the wife of the defendant William Aungier. The defendants Christopher Aungier and Margaret Aungier have no interest in the farm. The State has been engaged for some time in constructing the Cherry Valley road, which, when completed, will be one of the main highways extending east and west across the State. Surveys for the part of said highway extending easterly from Skaneateles through Cardiff and Lafayette were completed in 1930 and the State was ready to receive proposals and award a contract for the construction of this road early in 1931. This road when completed will extend across the defendant's farm in an easterly and westerly direction, leaving about one-third of his farm on one side and two-thirds on the other, and its construction requires the removal or destruction of a large barn.

In December, 1930, the board of supervisors of Onondaga county adopted a resolution directing the condemnation of that portion of defendant's property required for this highway. It does not appear that the board had carried on any negotiations with the defendant for the purchase of the property prior to the adoption of this

resolution except that a right-of-way man employed by the highway department of the county talked with defendant in reference to the damage that would be caused by the construction of the highway.

In March, 1931, the State acting through the Public Works Department, Division of Highways, received proposals for the construction of the highway in question, and early in April, 1931, awarded a contract for the construction thereof. On April 13, 1931, the county attorney requested Mr. Scammell, a former supervisor, to negotiate with defendant for the purchase of the property required for the construction of the highway. Mr. Scammell negotiated with defendant and as a result obtained his signature to a written contract, called an option, whereby the defendant agreed to sell this property to the plaintiff for the sum of $8,000, plus the expense of moving certain buildings thereon. Mr. Scammell returned this option to the county attorney. Apparently the terms of the option were unsatisfactory and on or about April 19, 1931, the county attorney requested Supervisor Shea, who was a member of the highway committee of the board of supervisors, to obtain a more favorable arrangement with defendant. Mr. Shea called on defendant at his home about April 19, 1931, and negotiated further with him for the purchase of the property required by the highway. As a result of that negotiation, the defendant signed another option whereby he agreed to sell this property to the plaintiff for the sum of $8,000 flat, thereby eliminating the provision of the former option requiring the plaintiff to pay the expenses of moving the buildings. Mr. Shea returned this last option or contract to the county attorney, who expressed himself as well pleased with it.

This last-mentioned option or contract contained the following provisions: " and I (we) hereby further covenant and agree, that the State Commissioner of Highways and his agents and the contractor to whom the contract may be awarded for the improvement of said highway, together with his workmen and employees, may immediately enter upon the premises described herein for the purpose of the construction or reconstruction of said highway without becoming or being held liable for trespass or for any damages whatsoever to me (us), and I (we) do hereby waive any and all claims for damages for such entry or occupation."

On April 27, 1931, the highway committee of plaintiff's board of supervisors, which is composed of nine members of the board, inspected the right-of-way across defendant's farm, seven members of the committee being present, and after completing the inspection, the committee returned to the office of the highway department of

the county and those present voted unanimously to accept the option which defendant had signed for Supervisor Shea.

Thereafter a formal resolution accepting said option was signed by a majority of the highway committee. The board of supervisors took no formal action in the matter.

About June 1, 1931, possibly a day or two earlier, the contractor employed by the State, who was engaged in constructing this highway, entered defendant's premises on the west line with a force of men, steam shovels and trucks and commenced to excavate and cart away the soil in constructing said highway. The earth was moved a considerable distance west from the defendant's property where it was used in making a fill. The contractor continued to work and was so engaged at the time of the trial.

Authority for plaintiff to commence this proceeding is found in sections 148–150 of the Highway Law, as amended, and in the Condemnation Law. The Highway Law, section 148 (as amd. by Laws of 1930, chap. 189), provides that "The Board of Supervisors of the county * * * shall provide the requisite right of way prior to the advertisement for proposals."

The board of supervisors may by resolution authorize its chairman, a member or a committee to purchase the lands to be acquired. (Highway Law, § 149, as amd. by Laws of 1924, chap. 460.) The purchase price of such land shall be a county charge. (Highway Law, § 149, as amd. by Laws of 1924, chap. 460.)

Defendants urged numerous objections to the validity of the procedure followed by the plaintiff in this proceeding. Among other things, it was urged that plaintiff did not take the preliminary steps required by law before instituting this proceeding. On this point, my attention has been called to the decision of our Appellate Division in *County of Jefferson* v. *Horbiger* (229 App. Div. 381). In that case the court, Judge CROUCH writing, defined in clear and concise language the preliminary steps which the Highway Law requires a county should take before commencing a proceeding of this character. The decision in that case clarifies a situation in reference to which there has been much confusion. However, in view of the conclusion which I have reached, I do not deem it necessary to pass on all of the objections made by the defendant.

While plaintiff's board of supervisors did not by resolution or otherwise appoint its chairman or one or more of its members a special committee to negotiate with defendant for the purchase of the property required, it did appoint and maintain a highway committee composed of nine members of the board. The resolution appointing this highway committee, if any, was not produced in evidence. It does, however, appear that the members of this high-

way committee had the authority to and actually did take options from property owners and accept same and generally acted for the board of supervisors in purchasing land necessary for highway purposes. Its power appears to have been quite general. Apparently it was the agency adopted by the board of supervisors to act for it in making purchases of land required by the State for the construction of highways and concededly it acted for plaintiff in dealing with defendant.

The county attorney insists that this highway committee had no authority to purchase defendant's property and that a resolution of the board of supervisors was essential before the actual purchase could be made. I find nothing in the statute in question requiring such a resolution on the part of the board of supervisors and no proof was produced of any resolution of the board requiring such procedure. The statute empowers the board of supervisors to appoint a committee to make the purchase. (Highway Law, § 148.) It seems to me that under the evidence before me I must hold that this highway committee was authorized to make the purchase of defendant's property required by the statute and to arrange the details for the payment thereof.

In my judgment the plaintiff has ratified the act of its highway committee in accepting the option or contract made with the defendant. It must be found that the contractor entered upon defendant's premises and commenced the construction of the highway under the contract or option with the defendant. Apparently the contractor had no other right to enter defendant's premises and begin work except under this contract. As we have seen, the contract with defendant protected the State and its contractor against claim for trespass in entering defendant's premises and carrying on the work. Besides, plaintiff at no time rescinded or canceled this contract with defendant, and no notice of its intention to do so was given to defendant. Under the circumstances this was a valuable right. The contract for the construction of the highway had been let by the State prior to the time this contract with the defendant was entered into and the contractor was proceeding with the construction of the highway. In the event of a breach of the official duty imposed on the supervisors they might be personally liable to the State for any damages caused by their neglect, if there was neglect, and if the contractor was materially impeded because the right-of-way had not been acquired he might abandon his contract if such neglect materially affected the work. (*People* v. *Karr*, 240 N. Y. 348.)

So it was important for the supervisors to procure this contract with the defendant. By doing so they performed their statutory

duty. The plaintiff and the State have had possession of the right-of-way over defendant's farm for the purpose of building the road without objection or protest from defendant. The plaintiff has not carried out or performed its part of the contract by paying the purchase price stipulated in the contract.

Plaintiff's counsel argues with much confidence that the act of the contractor in taking possession of defendant's property and proceeding with the work of construction does not constitute a ratification of the contract with defendant or of the acts of the highway committee in accepting that option. I am not convinced of the soundness of his argument. The board of supervisors was required to provide the requisite right-of-way, and after that has been accomplished it requires the State to receive proposals and let the contract for the construction work. The plaintiff purchased the right-of-way from the defendant for the purpose of building the highway and for no other purpose. This right-of-way was procured so that both the State and the county might perform their statutory duty in the matter. I know of no authority squarely in point on this question, but under the evidence and authorities cited I find and hold that the act of the contractor in taking possession of defendant's property and proceeding with the construction of the highway was a ratification of the contract with defendant and of the action of the highway committee in accepting the option and the plaintiff is bound thereby. (*Moore* v. *Mayor*, 73 N. Y. 238; *People ex rel. Griffiths* v. *Board of Supervisors*, 143 App. Div. 722; *Vermeule* v. *City of Corning*, 186 id. 206; *Peterson* v. *Mayor*, 17 N. Y. 449; *Benedict* v. *Van Dusen*, 221 App. Div. 304; *Abells* v. *City of Syracuse*, 7 id. 501.)

To now hold that the contract or option is not valid and binding on the plaintiff would, in my judgment, leave the contractor and possibly both the State and county in a situation where they might be held liable for damages for trespass and unlawful entry. (*Konner* v. *State*, 227 N. Y. 478.)

There is no suggestion of fraud or misrepresentation on the part of the defendant in his dealings with plaintiff. The contract was drawn by a member of the highway committee and was signed by the defendant at his request. The State and county have received all the benefits which they were to receive under the contract. The plaintiff has refused to pay the purchase price agreed upon in the contract. On the trial defendant tendered to plaintiff a deed of the property in question and plaintiff declined to accept same. Defendant has in all respects performed his part of the contract. The plaintiff has failed to perform its part by refusing to pay the purchase price of $8,000. I, therefore, hold and decide that

the option signed by the defendant and dated April 20, 1931, whereby he agrees to sell the property in question to the plaintiff for $8,000, is valid and binding on the plaintiff; that the plaintiff has purchased the property described in the petition and cannot maintain this proceeding.

Petition dismissed, with costs to the defendant.

Any question as to amount of costs is reserved until entry of judgment.

Findings and judgment may be prepared and if not agreed upon may be settled before me on two days' notice.