GEORGE W. QUILLEN, as Guardian ad Litem for LE ROY QUILLEN, an Infant, et al., Plaintiffs, *v.* BOARD OF EDUCATION et al., Defendants.

Supreme Court, Trial Term, New York County, July 22, 1952.

*Joseph Brill* and *Henry G. Littau* for plaintiffs.

*Denis M. Hurley, Corporation Counsel* (*William F. Miller* of counsel), for defendants.

MATTHEW M. LEVY, J. On the trial of this negligence action, the defendant board of education admitted liability. The question of damages only was submitted to the jury. The verdict was $12,500 for the injured infant and $2,500 in favor of the father for medical expense. Plaintiffs move to set aside the principal award as inadequate, but do not complain about the adult's verdict.

On November 29, 1951, Le Roy Quillen, then ten years old, fell through a rusted, corroded and defective iron grating on the sidewalk, into the cellar of his schoolhouse. The 400-pound grating then fell into the opening and upon him. His immediate injuries were multiple fractures of toes on his right foot, and laceration of the sole. Gangrene set in and the fifth toe and part of the fourth were amputated. Two months were spent in the hospital and then the patient needed crutches for a while. It was claimed by plaintiffs that at the time of the trial, in June, 1952, the boy still had a slight limp. That there was then a

noticeable limp was denied by defendant, and its permanence was vigorously disputed. And, while future operations are contemplated by the plaintiffs, their necessity was contested at the trial.

There is no doubt about the court's power to set aside a jury verdict for an insufficient amount (Civ. Prac. Act, § 549; *Estabrook* v. *Nacken*, 264 App. Div. 883). The common practice is to grant a new trial unless the parties stipulate acceptance of a larger sum (cf. *Egan* v. *City of New York*, 263 App. Div. 387). But the discretion of the judge is quite limited; it is the jury's prerogative as finder of the facts to assess damages, especially in negligence cases where there is no mathematically set measure of possible damage. A verdict may be overturned when the damage award seems unconscionable or grossly unfair, or has no basis in law or fact, or is due to bias or prejudice on the part of the jury (*Proietti* v. *Castanzo*, 198 N. Y. S. 15). A judge cannot set aside a verdict merely because he disagrees with the amount of the award, but only if it is so low or so high as to outrage the conscience of the court (*Richards* v. *Sandford*, 2 Ed. Smith 349, 351; *Matthews* v. *Brooklyn & Queens Transit Corp.*, 245 App. Div. 731; *Irwin* v. *Klein*, 243 App. Div. 23; *Sheehan* v. *Coffey*, 201 App. Div. 87).

That is not the present situation. It cannot fairly be argued that the verdict returned by the jury in the instant case was so unreasonable as to have no basis in the evidence. During the trial, I had the youngster walk across the courtroom for the jury to observe, and I also permitted the boy to exhibit his injured foot to the jury. The expert medical testimony offered at the trial differed concerning the extent and seriousness of the injuries and of the resultant limp. One of the physicians called by plaintiffs predicted that the infant's limp, previously moderate and now slight, would not further improve, but would remain as a permanent disability; the other would not hazard a guess on this question. The doctor called by the defendants testified that the limp would in all likelihood completely disappear. Rarely is a verdict set aside if there is conflicting medical testimony on such an issue (*Condon* v. *Nilsen*, 278 App. Div. 698; *Cesario* v. *Demetria Realty Corp.*, 250 App. Div. 272). In the present case the jury could reasonably conclude that the limp would not be permanent. If so, the verdict of $12,500 was not unconscionably low. On the evidence, the certainty of expert opinion, the infallibility of professional prognostication, was peculiarly a jury question.

Plaintiffs urge that an off-the-record offer of $22,500 made by defendants' counsel during the trial indicates unquestionably that the infant plaintiff's injury deserves substantially higher compensation than $12,500. Such offer was not approved by the comptroller of the City of New York as required by paragraph (d) of section 93 and paragraph (c) of section 394 of the New York City Charter, and the making of a firm offer in that amount is denied. Since I had intervened in an endeavor to settle the case, some of the offers and counteroffers between the parties were made by respective counsel to and in the presence of the court; and I sought, on several occasions during the trial, to recommend, to persuade, in fact to urge, the plaintiffs to receptiveness of the defendants' offers in the neighborhood of $22,500. But the plaintiffs remained adamant, and I was unsuccessful. These negotiations, of course, were not part of the trial record, and I cannot take notice of them now. Moreover, I deem such offers irrelevant in any consideration of the adequacy or inadequacy of the damages awarded. Compromise offers are not accepted in evidence as admissions of liability or to measure the value of an admitted liability. They are considered as merely showing a desire to avoid or to seek a surcease of litigation on the part of the defendant — a policy favored by the law (Civ. Prac. Act, art. 21; 4 Wigmore on Evidence [3d ed.], §§ 1061–1062; Richardson on Evidence [7th ed.], § 366). If defendants' counsel did make the unaccepted offer, that did not necessarily show what he thought the injuries were worth; perhaps it was made because he might, with proper caution, have felt that the jury would return a higher verdict than $22,500. In fact, at one time during the trial, the plaintiffs insisted upon $40,000 in settlement of the case.

While it is true that the law is not a game, it is equally (though unfortunately) true that at times it is nevertheless a gamble. Unhappily for the plaintiffs, their hopes were not fulfilled. It was they who rejected the compromise offer; it was they who made the choice to go to the jury. That one cannot have his cake and eat it too is as true at the counsel table as at the dining table. The distinction between the gourmet and the gourmand is as neat and decisive in the prosaic realm of negotiation as in the festive sphere of gastronomic enjoyment — attempting to satisfy an unrestrained or exaggerated appetite in either field may prove discomforting if not disastrous. After rejecting an offer of compromise, and electing to proceed to trial and to seek a more favorable jury verdict, the plaintiffs cannot now resur-

rect the off-the-record offer, and attempt to have the jury's verdict set aside on the ground that its award was less than the offer. The court cannot take that offer into consideration in the exercise of the judicial function involved in a study of the evidence so as to determine the adequacy of the verdict. Were that not the rule, defendants generally would hesitate to make compromise offers, judges would not seek to aid in negotiation of settlements, legitimate claims subject to just and amicable disposition would be compelled to go through the ordeals of trial, the court calendars would become more congested than they are now, and delay and injustice in the judicial process would inevitably result.

It is further argued by the plaintiffs that the principal plaintiff is an infant of tender years, and, as he is a ward of the court, that I have a greater duty in the premises, and that as a consequence I should set aside the verdict so as to overcome the unfortunate refusal of the boy's father and mother (the former of whom is the guardian ad litem) to accept the offer of settlement. Indeed, it is solely because of the matter of infancy in the case, and the plaintiffs' earnest plea, that I did not promptly deny the plaintiffs' motion to set the verdict aside as inadequate, and that I have given the matter further study and have been constrained to undertake this extended expression of my views.

It is quite right, since an infant is a ward of the court, that I have the equitable duty of protecting his interests. (3 Story on Equity Jurisprudence [14th ed.], § 1742 etc.; 4 Pomeroy on Equity Jurisprudence [5th ed.], §§ 1303–1304.) I know quite well (*Goishen* v. *Samor Realty Co.,* 167 Misc. 477, 480; cf. *Stevenson* v. *Guardian Life Ins. Co. of America,* 175 Misc. 823; Civ. Prac. Act, § 205, as amd. by L. 1942, ch. 879) that, in an infant's action, the court appoints a guardian ad litem, that the conduct of the infant's case is supervised by the court, and, unlike similar cases involving normal adults, that a settlement must be approved by the court (Rules Civ. Prac., rule 294). But it must not be forgotten that the primary duty to protect the infant is that of the guardian and of their attorney, not alone as representatives of the plaintiff but as officers of the court (Rules Civ. Prac., rule 42). The court's duty is supervisory and protective, and not always mandatory. It certainly does not include a power to insist upon verdicts favorable to the infant. On the contrary, if the infant's case is not supported by the evidence or the law, he will, and should, lose — despite the fact that he is a ward of the court. Similarly, if damages are adequate as

measured by the general legal standards of judging adequacy, the court may not set the verdict aside merely because he personally might have awarded a higher sum.

When the guardian is acting against the interests of the child he may be removed, and another appointed in his place. But I cannot see how the honest choice of the guardian to submit the case to the jury and to rely upon its measurement of the injuries, instead of accepting a compromise settlement, is necessarily action by the guardian against the interests of the ward. The desire of any litigant to have a jury of his peers pass upon his claimed rights — rather than to permit himself to be persuaded, even by a judge, to compromise those claims — is too sacred and fundamental and too well-recognized to be the basis of compulsory removal. On the other hand, where the jury award is within reasonable legal limits, one who has invoked the right of trial by jury cannot complain when its determination is not up to expectation.

This is a sad case where the guardian made a wrong choice, and it backfired. But it is not within the power of the court now to correct the situation, even where an infant is involved, unless the verdict is so low as to be unconscionably insufficient. As I do not believe that this verdict meets this judicial requirement, the motion is denied.