Matthew M. Levy, J.
The plaintiffs are firemen, first grade, presently employed by the City of New York in its fire department. The defendants are the City of New York and the fire commissioner of the City of New York. The plaintiffs are some 370 in number, and, for the sake of convenience, they are divided into three groups with a particular plaintiff as representative: Group One, headed by the plaintiff Weiner, represents 337 plaintiffs, who are honorably discharged veterans of World War II appointed from the 1941 fireman eligible list; Group Two, headed by the plaintiff O’Boyle, represents 14 plaintiffs, who are honorably discharged veterans of World War II, appointed from the 1937 fireman eligible list; and Group Three, headed *1055 by the plaintiff Murphy, represents 19 plaintiffs, who are not war veterans and who were appointed from the 1941 fireman eligible list. The circumstances of their respective appointments have given rise to this litigation. The action is for back pay, aggregating (in principal sum) about $350,000. The issues now come to the fore by way of the defendants ’ motion for summary judgment dismissing the complaint, and the cross motion by the plaintiffs for summary judgment striking out the defendants ’ answer. The crucial facts have been resolved by way of a stipulation between the parties.
Appointments to municipal service positions in the city of New York are determined and governed by the New York City Charter and the Administrative Code. Chapter 6 of the charter provides, in part, that the Board of Estimate and the City Council shall adopt an executive budget for the fiscal year and that it shall be certified by the Mayor, the comptroller and the city clerk. In this budget shall appear the amounts estimated to be required to carry on the municipal functions for the ensuing year, and the budget must “ set forth all the terms and conditions under which ” the “ appropriations shall be administered.” The budget of 1945-1946, duly adopted by the Board of Estimate, provided that it “ shall be administered under the following terms and conditions set forth pursuant to section 123 of the New York City Charter ”:
“No vacancy in any schedule supporting appropriation for personal service existing on July 1st, 1945 or occurring thereafter during the fiscal year, except for the positions of elected officials and except in the Offices of the Presidents of the Boroughs, shall be filled except upon a certificate issued by the Director of the Budget and then only upon the terms contained in such certificate.
“ The head of the agency in which the vacancy exists shall make written application to the Director of the Budget for permission to fill the vacancy showing the Code and line numbers, the title of the position, the number of positions requested to be filled, the rate provided for the vacancy in the schedule and the rate at which it is requested to be filled. The Director of the Budget shall investigate the application and shall either grant or deny it in whole or in part and upon such terms and conditions as may be proper. * * #
“ The Comptroller shall not authorize the payment of any compensation to any person appointed on or after July 1st, 1945, except elected officials and except in the Offices of the Presidents of the Boroughs, unless there is on file in his office a certificate of the Director of the Budget authorizing the filling of *1056 the vacancy and then only in accordance with the terms and conditions stated in the certificate. ’ ’
The budget also provided that: ‘ ‘ Any schedule supporting an appropriation for personal service contained in this budget may be modified at any time by increasing or decreasing the rate of compensation or the number of days or period of time provided for any position, by change of titles, by adding new positions under new or existing titles or by eliminating positions, provided in such schedule, but only by resolution of the Board of Estimate or by the issuance of a certificate by the Director of the Budget countersigned by the Comptroller, approving such modification, and upon such terms and conditions as may be included in the certificate. Said modification may be made by the Director of the Budget countersigned by the Comptroller, upon request or consent of the head of the agency, or upon his own motion where it becomes necessary to keep within the amount appropriated in any code, within the amount scheduled within any line, or in the effectuation of other terms and conditions of this budget. Modifications may also be made by the Board of Estimate without request from or the consent of the head of the agency. ’ ’
Section 123 of the charter reads in part that “ the board of estimate shall have the power to increase, decrease or omit any item in the executive budget or to add any items thereto.” Section 128 states in part that the “ director of the budget, upon request of the head of an agency, shall, with the approval of the board of estimate, have power during any fiscal year to transfer an appropriation or part thereof from one line to another within the same schedule, provided the total appropriation for the applicable code item is not increased.”
Some time prior to December, 1945, the three platoon system in the fire department had been suspended because of manpower shortage during the war. The system was to be resumed as soon as practicable (Administrative Code, § 487a-11.0). On December 17, 1945, the budget director issued Certificate No. M-1434, to the effect that the fire commissioner’s request to fill positions of firemen at ($2,000) $2,420 per annum was approved, and code 5705-001, line 5 in the expense budget of 1945-1946, to permit the appointment of additional firemen, fourth grade, at ($2,000) $2,420 per annum, was accordingly modified. On the same day, the budget director also issued Certificate No. S-1706 (which covered the factual situation as represented by the plaintiff Murphy) and Certificate No. S-1707 (which covered the factual situations as represented by the plaintiffs Weiner and O’Boyle). The issuance of these *1057 latter two certificates appears to be a duplication of the permission already granted in Certificate M-1434 to the extent that it granted permission to the fire commissioner to fill 593 positions of firemen, fourth grade, at the rate of ($2,000) $2,420 under code 5705-001, line 16, and one of these certificates (affecting 569 positions) provided that the permission thus granted was on condition that the appointments would be made on December 17,1945, and that the appointees would be assigned to one tour of duty and paid therefor, and then granted indefinite leaves of absence without pay until they were recalled for actual duty in the department.
On or about December 17, 1945, each of the plaintiffs was certified for appointment as fireman by the New York City Municipal Civil Service Commission, and received written notice from the fire department to appear at fire department headquarters on December 17, 1945, with reference to his certification as such.* On December 17, 1945, the fire commissioner issued Special Order No. 213, which read in one part that the following named men (which included the plaintiffs) were appointed as firemen, and in another part, as follows: “ They shall perform one tour of duty from 4 p.m. until 12 Midnight, December 17,1945, after which they are hereby granted indefinite leaves of absence, without pay, effective at 12:01 a.m. December 18, 1945, until such time as they are assigned to active duty in this Department.”
The plaintiffs appeared on December 17, 1945, the day appointed, and took oaths of office as firemen, and served on that day the single tour of duty assigned in Special Order No. 213, signed the fire department’s supplemental payroll for that day and were paid therefor. All save Weiner signed without protest. At the top of the first page of this supplemental payroll appeared the following statement:
“ In accordance with Certificate No. S-1707, dated December 17, 1945, issued by the Director of the Budget, the following named are hereby appointed as Ununiformed Firemen in this Department, Bureau of Fire, with compensation each at the rate of ($2000.-) $2420 per annum for a probationary period of six months to take effect at 4 p.m., December 17, 1945 and they will be charged to the Code below.
“ They shall perform one tour of duty from 4 p.m. until 12 Midnight, December 17, 1945, after which they are hereby granted indefinite leave of absence, without pay, effective at *1058 12:01 a.m. December 18,1945, until such time as they are assigned to active duty in this department.” A similar statement, referring to Certificate S-1708, appeared at the top of the fourteenth page. At the top of the thirteenth page was a similar statement referring to the budget director’s Certificate No. S-1706, and omitting the final thirteen words — ‘ ‘ until such time as they are assigned to active duty in this department.”*
The plaintiffs were retained on the indefinite leaves of absence for some short periods of time — Murphy until January 6, 1946; and Weiner and O’Boyle until March 31, 1946. They received no compensation for the periods of such absences. When the leaves were revoked, the plaintiffs were ordered to and assigned specific active duty. They have ever since been (and are still) on such duty, and have received (and are receiving) compensation therefor. After such assignments, the plaintiffs were advanced in sequence to the positions respectively of firemen, third, second and first grades, with the increases in salary appropriate to the specific grades. However, in calculating the period of the service of each plaintiff (when determining his advancement as heretofore noted) the defendants did not include any part of the time during which that plaintiff was on the indefinite leave provided for in Special Order No. 213. In that regard, the Administrative Code, section 487a-7.0, provides that members of the fire department “ after one year of service in the fourth grade * * * shall be advanced to the third grade; after one year of service in the third grade * * * shall be advanced to the second grade; after one year of service in the second grade * * * shall be advanced to the first grade; and they shall in each instance receive the annual pay or compensation of the grade to which they belong.” Payrolls subsequent to the one of December 17, 1945, and covering periods for which claims have been made (up to at least the dates when the plaintiffs were advanced to the rank and pay of fireman, first grade) were signed under protest by all of the plaintiffs. Claims were presented to the comptroller of the City of New York and were refused by him. Hence, this suit.
Under the statutory background and factual pattern thus presented, the chief issues submitted for determination are: *1059 (1) The contention of the defendants that the initial appointments of the plaintiffs by the fire commissioner were illegal, and in consequence that they have no status whatever. (2) The contention of the plaintiffs that, while their appointments were valid, the fire commissioner did not have the legal right to impose indefinite leaves of absence upon the plaintiffs, without pay, on completion of a single tour of duty, as a condition precedent to their appointment and employment as firemen, and therefore the plaintiffs are entitled to compensation for the periods of such leaves of absence. And (3) the contention of the plaintiffs that they are entitled to receive credit for the periods of time of their alleged enforced leaves of absence for the purpose of respective advancements in grade and concomitant statutory salary increments.
The defendants argue that the appointments of all of the plaintiffs were illegal and void because of the ineffective modification of the budget of 1945-1946. They contend that the procedure adopted for amending the budget — in an effort to create the new positions of fireman — was not in accordance with the requirements of the statute in that there was no final action by the Board of Estimate itself (New York City Charter, § 128). Let me say at the outset, on this point, that it seems to me that it ill behooves the defendants to question the legality of the plaintiffs’ appointments when it was the defendants themselves who made the budget modification now attacked, who appointed the plaintiffs, who recalled them to active duty, who advanced them to higher positions, who placed them upon the payroll and kept and keep them there, and who continue to pay them regularly — all based upon the validity of the appointments ab initio. But, be that as it may, the defendants rely upon Matter of Broderick v. City of New York (295 N. Y. 363) and if that authority is in point on the law, my criticism as to the defendants’ inconsistency here is beside the point. That case seems to me to be plainly distinguishable from the case at bar. There, the budget director and the comptroller modified two city budgets by eliminating 10 positions in the fire department and creating 10 additional positions in the next higher rank, and these higher positions were not legalized by any statute, mandate or ordinance. There was no emergency indicated by circumstance or law. In the present case, however, the modification was made in the one budget here involved in order to create additional positions made necessary by the enactment of the Three Platoon Law (Administrative Code, § 487a-11.0) —which requirement did not exist at the time of the modifications in the Broderick case. And *1060 unlike the situation in Broderick, there was here no effort to create higher positions in substitution for lower ones, no attempt to eliminate any existing positions, no endeavor to create positions of any higher rank. While cited by the defendants in another connection, it is worthy of parenthetical note here that Matter of McGovern v. Patterson (273 App. Div. 35, affd. 298 N. Y. 530); Matter of Rushford v. La Guardia (280 N. Y. 217) and Matter of Dobrovolny v. Prendergast (219 N. Y. 280) are among the instances where the Board of Estimate was held to have lawfully delegated power to the budget director to fix the terms and conditions of the initial appointments of certain municipal employees — and thus of course the cases sustained the validity of the appointments themselves.
It is my conclusion that the Board of Estimate gave the approval — as required by section 128 of the charter — to the city officials here involved when it provided in the 1945-1946 budget that certain modifications may be made (as heretofore indicated) by these officials. And, in the circumstances of the instant case, I hold that the modification of the budget by the budget director and the comptroller, at the request of the fire commissioner, was within the authority of the Board of Estimate as envisaged in the charter and within the authority granted to the city officials in the 1945-1946 budget by the Board of Estimate when it adopted the budget. There was therefore no need for further direct action by the board itself. But if I am wrong in my view as to the validity of the modification ab initio, I shall nevertheless not hold the action void in view of the applicability here of the legal principles of estoppel and of ratification.
If the doctrine of estoppel applies to a municipality — and under certain circumstances I think it does (cf. Van Dolsen v. Board of Educ., 162 N. Y. 446, 452; Moore v. Mayor, 73 N. Y. 238, 245; Benedict v. Van Dusen, 221 App. Div. 304; Vandeweghe v. City of New York, 150 Misc. 815, affd. 242 App. Div. 762) — it is but equitable that it be invoked in the circumstances disclosed by this record. Justice requires that the defendants not be permitted now to assert the invalidity of their own procedures in effectuating the initial appointments in the manner in which they did. The question raised by the defendants is one about which the plaintiffs could not possibly have possessed any knowledge or information. They accepted their appointments in 1945, and entered upon their respective employments, and were paid and they still continue to be employed and paid — throughout the many years that have passed. These plaintiffs have thus been lulled by the defendants into a sense of security as to the impregnability of their civil service status. Belying in *1061 good faith — as they had the right to do in the circumstances here — upon the validity of their appointments and of their consequent continuance in employment, they did not — indeed they could not (Rules and Regulations for the Uniformed Force of the Fire Dept. of City of N. Y., rule 224) — during this entire period undertake any other occupation. The best years of these men’s lives have been spent in the city service — in a hazardous branch of that service — and it would be unjust that they now be cast aside because of the defendants’ omission long ago to do the acts the defendants had the power to do to perfect the authority the defendants assumed to exercise.
Assuming, arguendo, invalidity of the appointment ab initio, I find too that they have become legal by ratification. That the Board of Estimate itself had legal power to authorize these appointments is not disputed. It is obvious that (having such power at the beginning) the board could validate such appointments by subsequent ratification. (Cf. Peterson v. Mayor, 17 N. Y. 449; Vermeule v. City of Corning, 186 App. Div. 206, affd. 230 N. Y. 585; People ex rel. Griffiths v. Board of Supervisors, 143 App. Div. 722; Potts v. City of Utica, 86 F. 2d 616.) For nearly a decade the board has consistently adopted annual budgets providing for salary payments for these appointees, first in the lowest grades and then successively in the higher grades of firemen. This the board has continued to do after the Broderick, determination in June of 1946 (295 N. Y. 363, supra). This, it seems to me, is affirmation adequate enough to validate.
It is not certain that the claimed invalidity could effectively be urged in the present action (cf. Hagan v. City of Brooklyn, 126 N. Y. 643, case below reported 5 N. Y. S. 425; Thomson v. Board of Educ., 201 N. Y. 457, 461). But even if it is properly a present issue, the facts here deflect the attack upon the validity of the plaintiffs’ appointments. Nothing of legal substance has been presented by the defendants to warrant disturbance by the court of the plaintiffs’ status.
On this phase of the case, there remains another question, involving only G-roup III of the plaintiffs — whether the appointment of the plaintiff Murphy (a nonveteran outside the protection of the Military Law) was legal, since it was not made until December 17,1945, and since the eligible list, carrying this plaintiff’s name, was promulgated on December 16, 1941, and had a life of four years. The defendants urge that the initial appointments in the Murphy group were subsequent to the expiration of the list and hence invalid. There are, I think, two substantial answers to the defendants’ contention, in addi *1062 tion to the principles of ratification and estoppel heretofore discussed. In the first place, December 16, 1945 (the date when the Murphy list expired) was a Sunday, and the appointments could be made on the next business day, Monday, December 17, 1945. Calagna v. Sheppard-Pollack (264 App. Div. 589) (if in point as of the time of its determination) is no longer applicable in view of the enactment of section 25-a of the G-eneral Construction Law, which expressly provides for situations where the last day to act under the law falls on a Sunday or legal holiday insofar as any extension of time is concerned (cf. Stella v. Farley Assn., 204 Misc. 998, 1002, affd. 284 App. Div. 873). I hold that this section applies to the civil service statute, although the latter existed prior to the enactment of the section. In the second place, the jfiaintiff was actually reached for appointment on December 11, 1942 (at which time the list had by no means expired), but he was passed over then because he was in Class 2 in the United States Selective Service. Such passing over was later held to be illegal by the Court of Appeals in the case of Matter of Berger v. Walsh (291 N. Y. 220). Murphy’s appointment should have been made not later than February 1, 1943 — when the next lower man was appointed and when the list conccdedly was in force. In the circumstances, the specific attack upon Murphy’s appointment fails.
The next problem involves the efforts of the plaintiffs to upset the conditions placed upon their appointments at the time they accepted such appointments. The budget of 1945-1946 delegated to the budget director the power to fill vacancies and also to set forth the terms and conditions as to how such vacancies shall be filled. In my view, the budget director was authorized and empowered to issue the certificates heretofore referred to, and, under their terms, the plaintiffs had the salaries of their positions validly fixed, with the limitations and restrictions on these posts also validly established, and the plaintiffs in consequence were obligated and bound thereby. It is uncontradicted that the plaintiffs were aware of the restricting or limiting conditions imposed upon the appointments they sought and that they willingly and knowingly accepted them upon the terms offered (cf. Bacon v. Board of Educ., 205 Misc. 73, 78, affd. 285 App. Div. 1046, motion for leave to appeal denied 286 App. Div. 832, 309 N. Y. 1030).
The agreement made between the respective plaintiffs and the city at the time of their appointment is not violative of any provisions of the charter or the Civil Service Law and is not against public policy. While the plaintiffs’ names were on an eligible list, there was no obligation upon the defendants *1063 to create vacancies or to fill any existing vacancy. Passing the required tests and being “ on the list ” meant that “ so long as the eligible list remained in force, no appointments could be made except from that list ’ ’, but the plaintiffs did ‘"' not thereby gain a vested right to appointment to the position ’ ’ (Hurley v. Board of Educ., 270 N. Y. 275, 279). The filling of any vacancies in a position was not mandatory upon the city or the fire department (cf. Tonkin v. Leary, 234 App. Div. 448, affd. 259 N. Y. 510). As a consequence, the plaintiffs’ eligible list might validly have been permitted to expire. There would seem to be no reason, therefore, why, from the point of view of public policy, a prospective employee may not enter into a valid agreement to go on a leave of absence without pay pending the appropriation of funds to meet the necessary salary therefor. Such an agreement, made prior to appointment, is supported by a valuable consideration, and without it there was no assurance that the plaintiffs would have been appointed to the positions sought. There was no compulsion upon the plaintiffs to accept on these terms and when they did they cannot later reject the conditions accepted by them. This is not the only instance when in law as in life one cannot eat his cake and have it too (cf. Quillen v. Board, of Educ., 203 Misc. 320, 323). Such offer and acceptance could but result in a mutually binding agreement upon the precise terms set forth in the certificates of appointment. Agreements naming a certain salary or stipulations to serve at a lower rate as a condition of appointment to a particular position are valid and enforcible (Matter of McCarthy v. McGoldrick, 266 N. Y. 199).
The plaintiffs rely quite heavily upon the decisions in Toscano v. McGoldrick (300 N. Y. 156) and Kunz v. City of New York (204 Misc. 1027, revd. 286 App. Div. 252). I do not find that these cases are applicable. In the Toscano case (supra), the plaintiff’s intestate was an employee of the city. He was dropped from the payroll because of the abolition of his position. Subsequently, he was restored to his position by the Board of Estimate, upon the condition that he accept a reduction in salary and a leave of absence for the period he contended he was illegally ousted. The court held, in part, that, under these circumstances, his acceptance of the reinstatement thus conditioned was not a renouncement of his salary for that period nor a waiver of it. But Toscano’s intestate was in quite a different status from that of the present plaintiffs. He was a municipal employee whose job was illegally taken away from him; the plaintiffs in the case at bar were not (prior to their acceptance of the terms of their appointments) such employees, either with *1064 or without civil service status. In Kunz v. City of New York (supra), the plaintiffs, who were regular civil service employees of the City of New York, were entitled to be paid the per diem rate of wages prevailing in the same trade in private industry. Under budgetary provisions, they were limited to 250 days’ work at the correct per diem rate, although work was available (and performed by others) for 313 days. The plaintiffs sought redress because the city gave the available work to provisionals, rather than to the regular civil service employees. This suit was a belated one- — and not by way of a proceeding to stop the city from employing provisionals, but an action to recover the prevailing wage rate per diem for the days allegedly lost and not worked on by the plaintiffs. Special Term found in favor of the plaintiffs and held that releases executed by them in favor of the city waiving any claim arising by reason of “ services heretofore rendered ” and “ for differences in wages heretofore received,” did not affect the situation. It is clear that the Kuns releases covered claims other than the subject matter of the action. The case (even at nisi prius) is thus distinguishable from the one at bar and is of no avail to the instant plaintiffs.
The plaintiffs invoke section 8-a of the Civil Service Law, which reads as follows: “ § 8-a. Waiver of Eights. No public officer nor any administrative employee acting for a public officer shall be permitted to require a candidate for employment to sign any document whereby such candidate for employment waives any right or rights accruing to him under this chapter. No public officer shall require an employee to waive any rights accruing to such employees under this chapter, provided, however, that employees may waive right of redress against their department head if they elect to work pending enactment of necessary appropriations. Under such conditions employees shall be placed on a preferred list just as if they were laid off for lack of work and appropriation in accordance with section thirty-one of this chapter.” As I construe this statute, it is of more aid to the defendants than to the plaintiffs. It would appear to me that the plaintiffs were given the protection of this section, in that they were placed upon an inactive list and subsequently recalled to active duty without the necessity of examination. And it would appear further that if we were to correlate the instant set of facts to the statutory provisions relied upon by the plaintiffs (Civil Service Law, §§ 8-a, 31), the defendants had the authority and power to grant these plaintiffs leaves of absence without pay, pending the necessary appropriations.
*1065 Now, as to the third issue requiring resolution in this case. The compensation to be paid to the officers and men in the service of the fire department of the City of New York is fixed by section 487a-7.0 of the Administrative Code. There it is provided, in substance, that the salaries of the various grades in the uniformed force shall be increased “ after one year of service ” in each respective grade up to the first grade. A reading of this section leaves no doubt that the basis for the increments is that of time of actual service. The courts have long so held. (See Mulligan v. City of New York, 194 Misc. 579, affd. 275 App. Div. 795, affd. 300 N. Y. 541.) In the instant case, the plaintiffs did not actually serve for some time after December 17, 1945 — after only one tour of duty on that day. Additional credit for their time of service can therefore be computed only from the dates that they were recalled to active duty and actually served. In Matter of Chikofsky v. Walsh (296 N. Y. 642), the petitioners had been reached for appointment from the eligible list, but had been passed over by the fire commissioner. After the decision in Matter of Berger v. Walsh (291 N. Y. 220, supra), the commissioner issued orders appointing the petitioners and backdated their appointments to the time when they had been passed over. The question in the Chikofsky case arose whether the petitioners were entitled to be credited with the period between the retroactive dates of appointment for the purpose of computing advancement in salary, under the increment provisions of section 487a-7.0 of the Administrative Code, the same statute here involved. The court held that they were not. Matter of Cotter v. Watson (282 App. Div. 292, affd. 306 N. Y. 681) cited by plaintiffs, is not in point, for the basis of the relief accorded that petitioner was the Military Law — concededly not applicable here. (Cf. Kelly v. Quayle, 70 N. Y. S. 2d 52, 54.)
The sole and obvious purpose of the statute is to guarantee to an employee a minimum increase in salary at the end of each year of faithful service in his position. The mere naked creation and the continued barren existence of an employee-employer relationship — such as is here involved — cannot be deemed to have increased the value of the employee’s services to the city or to have bettered the quality of such service. Department morale would not be improved if the employee so appointed and so absent may, upon returning, lay valid claim to exactly the same promotion and salary increment as fellow employees who by actual service truly reaped the benefit of experience on the job. I disagree with the plaintiffs’ contention that section 487a~4.0 of the Administrative Code would apply. *1066 This is not a case of an appointment for — coupled with service during — a probationary period. The present plaintiffs rendered no service after the first day’s tour of duty and until their leaves of absence expired. Not so a probationary appointee. Such a fireman renders actual service during the period of his probation. And thus it is that the code section referred to expressly provides that “ [t] he service during probation shall be deemed to be service in the uniformed force if succeeded by a permanent appointment, and as such shall be included and counted in determining eligibility for advancement, promotion, retirement and pension ’ ’.
Nor is this a case where a fireman had served as such for some time and then taken an emergency leave of absence of reasonably short duration ■ — where I should perhaps be inclined to hold (as a de novo proposition) that a deduction of the period of such absence would be inappropriate. Yet, even in such situation, I would be confronted with the decision in Wegener v. Dayton (285 N. Y. 757), where it was held that a civil service stenographer in the employ of the office of the comptroller of the City of New York was not entitled to have credited toward the annual salary increment provided for by section B40-6.0 of the Administrative Code the period of five months during which she was absent on maternity leave. Reference may also be made to Field v. City of New York, decided after trial in favor of the defendant by the Municipal Court of the City of New York, affirmed by the Appellate Term, First Department, of the Supreme Court (N. Y. L. J., July 3,1952, p. 20, col. 6) motion for leave to appeal denied by the Appellate Division (N. Y. L. J., Nov. 13, 1952, p. 1142, col. 8). The issues presented there for determination are the same as those presented here with respect to the Weiner group and bear a very close resemblance to those involved in a consideration of the problems raised with reference to the O’Boyle and Murphy groups. In the Field case, the plaintiff was a veteran. He competed in an examination for the position of fireman and was placed on the 1941 civil service eligible list. He was certified and appointed, on the same day and at the same time and under the same conditions as the present plaintiffs. The budget-modifying certificate M 1434 and the vacancy-filling certificate S 1707 and the fire commissioner’s order of appointment applied to him and to these plaintiffs as well. However, just before the eligible list containing Field’s name and the names of these plaintiffs expired, the defendants decided Jo appoint all those still remaining on the list, despite the fact that the 1945-1946 budget lacked any appropriations for any such ■ appointments. Nonetheless, as herein- *1067 before stated, the defendants sent out notices to all on the list (including Field) to appear for appointment on December 17, 1945. In accordance therewith, Field and these plaintiffs appeared, took the oath of office, were sworn in as firemen, performed the one stipulated and agreed upon tour of duty, and signed the payroll. Subsequently, Field also was recalled to active duty and was advanced from grade to grade. Later he presented a claim for unpaid salary to the comptroller for that period of time that he was on the indefinite leave of absence, as well as for the statutory wage increments. All the courts before which his suit was pressed found for the defendant. Under the facts as here submitted, and under the applicable law, I am constrained to adopt the same view.
The defendants’ motion for summary judgment dismissing the complaint is granted, and the plaintiffs’ cross motion to strike out the defendants’ answer and for summary judgment in the plaintiffs’ favor under rule 113 of the Rules of Civil Practice is denied. Orders have been signed to that effect.

 The written notices sent to plaintiffs did not contain any reference to the leave of absence. In my view, this is immaterial in the light of the facts here,

 Itshould be noted here that the portion of the commissioner’s special order appointing the plaintiff Murphy and limiting his service to one tour of duty on that day also made no reference to the fact that the indefinite leave of absence granted him was “ until such time as [he is] assigned to active duty in this Department.” I do not believe that the omission of these words affects the situation one way or the other.